No. 2616

# In Re FOSTER'S ESTATE

December 5, 1923.                    220 Pac. 734.

1. DIVORCE — EXECUTORS AND ADMINISTRATORS — DAUGHTER HELD MEMBER OF "FAMILY," THOUGH DIVORCE DECREE AWARDED CUSTODY TO DECEDENT'S WIFE.

A decree of divorce awarding custody of a daughter to wife does not affect daughter's status as a member of her father's "family" within Rev. Laws, 5957, providing that the court may set apart for the use of the family of the deceased all personal property exempt by law from execution, which by section 5288, subd. 14, as amended by Stats. 1920–1921, p. 24, includes proceeds from certain life insurance, especially where she was actually living with him at the time of his death.

2. DIVORCE—RIGHT OF CUSTODY OF CHILD MAY BE WAIVED.

Under a divorce decree giving the mother exclusive custody of a child, the right of custody was merely a personal privilege, which the mother might at any time waive.

3. DIVORCE—DIVORCED PARENT'S RIGHT TO CUSTODY OF CHILD HELD WAIVED.

That the daughter of divorced parents, whose custody had been awarded to the mother, with her mother's consent left her home with all her belongings two months prior to her father's death and went to live with him, and was living with him at the time of his death, *held* to show a temporary waiver of the mother's right to the exclusive custody of the daughter.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

In the matter of the estate of Sidney Smith Foster, deceased. Petition by Ruth Virginia Foster, by her mother as guardian, against Hazel Chapman Aubery, executrix of Sidney Smith Foster, deceased, praying that insurance money collected by the executrix be declared exempt and set apart to her use. From an order granting the petition and denying the motion for new trial, executrix appeals. **Affirmed.**

*Sardis Summerfield,* for Appellant:

The daughter was member of mother's and not father's family, at time of his death, the divorce court having awarded custody of daughter to mother. The state exercised its right of parens patriæ, which is superior to natural right of parents. Wadleigh v. Newhall, 136 Fed. 941; 29 Cyc. 1588, 1590; Schauler on Domestic Relations (5th ed.), secs. 246–248.

The decree in divorce case cannot be questioned in supreme court or elsewhere, until reversed or altered by proper court in jurisdiction where given. Hertzen v. Hertzen, 208 Pac. 582.

The legal family status of Ruth Virginia Foster at the time of her father's death is civil status fixed by state and is not a mere ambulatory shifting thing that can be changed to suit parties. In Re Forney's Estate, 44 Nev. 279; 1 Nelson, Divorce and Separation, 64; Freeman, Judgments (3d ed.), 661.

A family is collective body of persons who live in one house, under one head or manager. The relations between them must be of permanent and domestic character; not those of abiding temporarily together as strangers. Duncan v. Frank, 6 Mo. App. 286.

A person and his or her children permanently separated cannot constitute family. Rock v. Haas, 110 Ill. 528.

The word "family," in its broadest sense, will include all dwellers in house under control of one person, and it is in this respect anonymous of household. Re Lambson, Fed. Cas. No. 8029.

The judgment decree of divorce in Foster v. Foster, until modified, is res adjudicata in fixing civil family status of Ruth Foster. 2 Bishop, Marriage and Divorce (2d ed.), 1189; Dubrois v. Johnson, 96 Ind. 6.

A judgment binds not only parties, but it is also res adjudicata as to all who are in legal privity with parties or either of them. Ruth Foster was in legal privity in estate, in blood, and in law with both her father and mother. State v. Moore, 46 Nev. 75; Ahlers v. Thomas, 24 Nev. 409.

*S. R. Tippett* and *Wm. McKnight*, for Respondent:

Ruth Foster, if a member of her father's family, is entitled to have insurance money set apart for her benefit. It is admitted the premium did not exceed $500 per annum and that proper application was made that insurance money be set apart for her use. Rev. Laws, 5288, subd. 14, as amended 1920–1921, pp. 22, 24; Rev. Laws, 5957; In Re Lavendol's Estate, 46 Nev. 181.

The decreeing of custody of daughter to mother gave personal right which mother might, and did, waive. Sidney Foster did not cease to be head of family by reason of divorce, and his child was still member of his family. Re Rhodes, 109 Fed. 17; Byers v. Byers, 21 Iowa, 268.

Ruth Foster resided "on the premises" with her father, which brings this case squarely within rule announced in Holcomb v. Holcomb, 120 N. W. 547, though it would not be necessary under our law that she so reside.

The husband does not cease to be head of family by reason of divorce. Byers v. Byers, supra.

That wife is divorced and awarded custody of the children should not deprive them of all interest in homestead property. Woods v. Lewis, 34 Iowa, 264.

Even though children live with divorced mother in another state, if father furnishes support, he is "head of the family" and entitled to benefit of exemption laws. Roberts v. Moudy, 46 N. W. 1013.

A divorce decree does not affect character of property as homestead. Decree did not depose father as head of family nor extinguish his right to hold homestead exemption, because he owed support to his children. Shook v. Shook, 145 S. W. 682.

By the Court, DUCKER, C. J.:

1. On November 23, 1921, Jennie Foster, then the wife of Sidney Smith Foster, instituted an action against him for the purpose of obtaining a decree of divorce, the exclusive custody of the minor child of the issue of said marriage, and also for the purpose of requiring the father by the judgment of the court, to pay to the mother for the care, maintenance, and education of said minor child the sum of $50 monthly until the said child shall become of age.

The husband answered the complaint, and a trial was had in the district court which resulted in a decree of divorce for the wife, by the terms of which she was awarded the exclusive custody of the minor child with

the right of visitation by the father at all reasonable times. It was also decreed that the defendant pay to the plaintiff, for the care, maintenance, and education of said minor child, the sum of $50 per month until she should become of age.

On February 18, 1922, Sidney Foster made his last will and testament, by the terms of which he bequeathed all of his property, with the exception of his automobile, to Hazel Chapman Aubery, with the provision and upon the express condition that she pay to his daughter, Ruth Virginia Foster, $50 per month from the time of his death until the daughter should become of age, in accordance with the divorce decree. He bequeathed his automobile to his daughter with the condition that, should she or her guardian attempt to break the will, she was to receive the sum of $5 only.

On June 15, 1922, Sidney Foster died; his will was duly admitted to probate, and Hazel Chapman Aubery was duly appointed executrix. The executrix collected from the New York Life Insurance Company the sum of $1,817, proceeds of an insurance policy upon the life of Sidney Foster, the annual premium of which did not exceed $500. Thereafter, Ruth Virginia Foster, by her mother as guardian, filed a petition praying that the sum of $1,817 insurance money collected by the executrix, be declared exempt and set apart to the use of said minor child, as her sole and separate property, upon the ground that Ruth Virginia Foster was a member of the family of Sidney Smith Foster. The executrix filed an answer to the petition, to which answer petitioner replied. Thereafter the matter was tried by the court and the petition granted. A motion for a new trial was made and denied. From the order granting the petition and denying the motion for a new trial, the executrix has appealed. In addition to the foregoing facts, it appears that at the time of Sidney Foster's death his daughter was living with him at his home and had been living with him for about two months prior thereto. This arrangement was at the father's request, and with the mother's consent.

The facts present but one question for decision: Was Ruth Virginia Foster a member of the family of Sidney Smith Foster? Section 5957 of the Revised Laws provides in part:

"Upon the return of the inventory or at any time thereafter during the administration, the court or judge, of his own motion, or on application, may set apart for the use of the family of the deceased all personal property which is exempt by law from execution.  *  *  *"

By subdivision 14 of section 5288 of the Revised Laws, as amended by Stats. 1920–1921, p. 24, the following property is exempt from execution:

"All moneys, benefits, privileges, or immunities accruing or in any manner growing out of any life insurance, if the annual premium paid does not exceed five hundred dollars, and if they exceed that sum a like exemption shall exist which shall bear the same proportion to the moneys, benefits, privileges, and immunities so accruing or growing out of such insurance that said five hundred dollars bears to the whole annual premium paid."

If Ruth Virginia Foster was a member of the family of the deceased, it was the duty of the court on proper application, by force of the foregoing statutes, to set the insurance money apart for her use. In Re Lavendol's Estate, 46 Nev. 181, 209 Pac. 237. She was his only child, and by the effect of the divorce his former wife was no longer a member of his family.

It is urged by appellant that the decree of divorce, awarding the custody of the daughter to the divorced wife, had the same effect as to the daughter; that it established her legal family status separate and apart from the father. We think that the legal family status of the decree was limited merely to custody, and deprived the father of the right to share therein. The decree in this respect proceeded from the consideration that, of the parents, the mother, under all of the circumstances, including age and sex, was the proper one to be intrusted with the care and custody of the child. The father's paternal interest in his minor child

was in no wise affected, nor was his natural and legal obligation of support relieved by the decree. He was bound by it to such support, and was liable for the proper maintenance of his child, notwithstanding the decree. The divorce dissolved the legal family relation between the husband and wife, but under what legal or humane consideration could it be accorded the force of destroying the natural family tie between father and child? In granting a divorce the best interests of minor children are always of highest consideration, but in this case, if appellant's contention was admitted to be of force, it would operate against the right of a child, in no way responsible for the parents' differences. Its right to a beneficial interest in the father's estate would be entirely cut off through no fault of its own. We can concede no such force to the decree. The authorities are in accord with this contention.

In Biffle v. Pullam, 114 Mo. 50, 21 S. W. 450, the wife obtained a divorce from the husband and was awarded the custody of the children, and alimony. The husband continued to occupy the homestead. On the order allowing alimony, execution was issued and levied upon the homestead, which was sold to plaintiff, who brought suit in ejectment. A judgment for plaintiff was reversed by the supreme court, with directions to the lower court to enter judgment for defendant. In reference to the effect of the divorce the court said:

"The relation which theretofore existed between him and the members of his family was indeed disturbed and broken up by the divorce, but his right to hold this property exempt from sale under execution for the benefit of himself and family was not thereby lost or destroyed, no more than if his wife had died or deserted him, and his children were absent from him; in which case he would not have lost his homestead right."

Holding in accord with the same principle are Woods v. Davis, 34 Iowa, 264; Walker v. Walker, 181 Ill. 260, 54 N. E. 956; Roberts v. Moudy, 30 Neb. 683, 46 N. W. 1013, 27 Am. St. Rep. 426; Shook v. Shook (Tex. Civ. App.), 145 S. W. 682–685.

In Speer & Goodnight v. Sykes, 102 Tex. 451; 119 S. W. 86, 132 Am. St. Rep. 896, the court said:

"The fact that the court awarded the custody of the minor children to the wife did not deprive Sykes of his paternal interest in them, nor did it discharge him from his legal and moral obligation to care for and support them. They were still his offspring and a part of his family [citing cases].

"In Hall v. Field [81 Tex. 553, 17 S. W. 82] the object of the proceeding was to secure the use of the father's homestead to the minor children after his death, he having been divorced from their mother. The decree of divorce gave the custody of the minor children to the mother and they actually lived with her, yet the supreme court held that the divorced husband continued to be the head of a family and was entitled to a homestead under the constitution. Although the children did not live with him, they constituted a part of his family. It could not be that the children were entitled to the homestead unless the father was the head of a family at his death. The facts in this case are more favorable to Sykes's claim of homestead than in Hall v. Field. The facts which favorably distinguish this case from Hall v. Field are in this case the children actually lived with the father and constituted a part of his family, while in that case the children lived with the mother. Mrs. Sykes did not claim the benefit of the decree which awarded to her the custody of the children, while in the case of Hall v. Field the mother did avail herself of a similar order, took control of the children, and kept them with her. The case cited has not been questioned, and clearly settles the law to be that, although a man be divorced from his wife, and his children live separately and apart from him, his status as the head of a family is not lost; therefore, his right to a homestead remains."

**2, 3.** While, under the view we take, it was not essential for the daughter to be living with her father to constitute her a member of his family, yet such is the fact. And in this respect the present case may be

favorably distinguished from the case of Hall v. Field, discussed in the foregoing opinion. On this point it is urged by counsel that the agreement of the parents that the daughter take up her home with her father could not operate as a modification of the decree giving the mother the exclusive custody of the child, and, further, that the consent of the mother, at the most, was only conditioned upon the father continuing to pay to her the amount adjudged by the court for the support of the daughter. As to the last phase of the contention, we are satisfied that the facts show at least a temporary waiver of the mother's right to the exclusive custody of the daughter. As to the first part of the contention, the mother's right of custody was merely a personal privilege, which she might at any time waive, and actually did waive. For, with her consent, whether conditional or absolute, the daughter had left her home, with all her belongings, two months prior to the father's death, and went to live with him, and was actually living in his home at the time of his death. Under such circumstances, to say that she was not a member of his family would be wholly contrary to the legal effect of the facts.

On the effect of a decree of divorce awarding the exclusive custody of children to the mother, and as to her privilege of waiving the right of such custody in favor of the divorced husband, the court in Sykes v. Speer (Tex. Civ. App.), 112 S. W. 422–426, said:

"When the decree of the court awarded her the custody of the children it was merely a judicial determination that she, as between herself and Sykes, should have the preference legal right to the exclusive custody, and to that extent alone deprived Sykes of his natural right to share equally with her in the custody and support of the children. The right thus conferred upon Mrs. Sykes was a personal one, and one which she might waive in favor of her divorced husband should she see fit to do so."

We have given careful consideration to the authorities collected and analyzed in the able brief presented by

appellant's counsel, but we do not consider them to be in point. Some of these authorities relate to the meaning of the word "family." As said in Jones v. Golick, 46 Nev. 10, 206 Pac. 679, the word is one of great flexibility, and the definitions given by legal authorities vary considerably. The facts of each case must govern as to its actual scope. In Jones v. Golick, supra, quoting approvingly from the case of Sheehy v. Scott, 128 Iowa, 551, 104 N. W. 1139, 4 L. R. A. (N. S.) 365, we adopted the following rule as applicable to the facts of the former case:

"To constitute one or more persons, with another, living together in the same house, a family, it must appear that they are being supported by that other in whole or in part, and are dependent on him therefor, and, further, that he is under a natural or moral obligation to render such support."

Clearly, the minor child in the instant case comes within the scope of this rule.

The judgment is affirmed.

SANDERS, J.: I concur.

COLEMAN, J., concurring:

I concur in the order of affirmance and in that portion of the opinion of the learned chief justice which holds that under the testimony showing that Ruth Virginia Foster was actually residing with her father at the time of his death, and had been so residing for some months prior thereto, the lower court was justified in holding that she was a member of his family. This finding being sufficient, in my opinion, to justify an affirmance of the judgment and order appealed from, I do not deem it necessary to consider the other question discussed.