# ELSMAN *v.* ELSMAN

No. 2951

September 3, 1931.                    2 P. (2d) 139.

*Thatcher & Woodburn* and *Forman & Forman,* for Respondent:

*Samuel Platt* and *Cooke & Stoddard,* for Appellant:

## OPINION

By the Court, COLEMAN, C. J.:

Respondent has moved to dismiss the appeals in the above-entitled cause.

In January, 1927, the lower court granted a divorce to Beatrice J. Elsman from Ralph Elsman, and awarded to him the custody of their minor child, Ralph Elsman, Jr., subject to certain rights of visitation by the mother. In May, 1928, the court modified the original decree relative to the custody of the minor child. On November 4, 1929, Ralph Elsman filed in said court and cause a motion to again amend the said decree relative to the custody of said child, and thereafter the said Beatrice J. Elsman filed her objections to the modification as sought by Ralph Elsman, and applied for a modification thereof so as to give her the sole possession and custody of said child.

After numerous continuances, hearings, and a prohibition proceeding in this court (State Ex Rel. Elsman v. District Court, 52 Nev. 379, 287 P. 957), the lower court on December 3, 1930, filed its written opinion and decision wherein it incorporated the following:

"It is the order of this court that the petitions or motions of both plaintiff and defendant for the modification of the decree of this Court entered herein January 4, 1927, relative to the custody of Ralph Elsman, Jr., as modified May 2nd, 1928, be, and each of said motions or petitions for modification is denied.

"And it is ordered that the said order of modification of May 2nd, 1928, be and the same is affirmed and continued in force as therein provided, save and except that instead of the defendant, Beatrice Elsman, being entitled to one month's visitation of an hour a day on notice by her to plaintiff of any one month in each year desired by her, it is the order of this Court that said right of visitation be, and the same is fixed for the month of July of each year, at which time defendant shall have the right to visit the minor child, Ralph Elsman, Jr., for one hour each day at either of the homes of said minor's father in Washoe County, Nevada, at the Franktown residence or the Reno residence."

Thereafter, and on December 10, 1930, counsel for the defendant served and filed a motion for a new trial. Counsel for plaintiff also filed a motion for a new trial.

Both motions came on for hearing on December 23, 1930, at which time counsel for plaintiff withdrew his motion for a new trial, and thereafter, on December 23, 1930, argument was heard upon defendant's motion. After argument the court entered an order denying defendant's motion.

On the 23d of December, 1930, the court, on motion of counsel for plaintiff, ordered that an order, nunc pro tunc, as of December 3, 1930, in terms identical to those incorporated in the decision of December 3, 1930, be entered.

On February 26, 1931, the defendant served and filed her notice of appeal "from a judgment rendered in favor of the plaintiff and against the defendant in the above-entitled action and court on December 3, 1930, and also from that certain order made by the above-entitled court in the above-entitled cause on December 23, 1930, denying defendant's motion and application for a new trial of said cause, said order being entered in the minutes of the court on or about December 31, 1930."

Thereafter, on May 4, 1931, the defendant served and filed her notice of appeal "from an order Made December 3, 1930 in the above-entitled Court and cause in favor of plaintiff and against the defendant, denying defendant's application for an award that defendant be granted custody of Ralph Elsman, Jr., a minor child of plaintiff and defendant, the Minute record of which said order denying defendant's said application, was not approved and signed by the trial judge, to-wit: Hon. Geo. A. Bartlett, prior to March 10, 1931; and also, from that certain order made by the above-entitled Court in the above-entitled cause on December 23, 1930 denying defendant's Motion and application for a new trial of said cause, said order being written up by the Clerk in the Minute Book of said Court on or about December 31, 1930 and which said record was not approved and signed by the said Judge Geo. A. Bartlett prior to March 10, 1931."

Counsel for respondent on June 22, 1931, served and filed notice to dismiss the two appeals taken by appellant, for lack of jurisdiction of this court to entertain

the same, for which the following reasons are assigned:

"First: The proceedings sought to be appealed from and called in appellant's first Notice of Appeal, dated February 26, 1931, 'a judgment rendered in favor of plaintiff and against the defendant in the above-entitled action on December 3, 1930,' is not and was not a Judgment, but was and is an Order of the Court, denying defendant's Motion for an Order modifying, changing, and amending certain parts of the Decree of divorce heretofore made and entered in said action on the 4th day of January, 1927, and that no appeal was taken from said Order of December 3, 1930, within sixty days from the time said Order was made and entered in the Minutes of the Court;

"Second: That the appeal from the Order of the Court in said cause on December 23, 1930, denying defendant's Motion and Application for a new trial, was not taken within sixty days from the time said Order was made and entered in the Minutes of the Court;

"Third: That there is no authority under the laws of the State of Nevada, for the new trial of a Motion, and that no appeal lies from an order denying such motion for new trial;

"Fourth: That the court has no jurisdiction to entertain defendant's attempted appeal under her Notice of Appeal dated May 4, 1931. That said appeal was not taken within sixty days from the time the Order of December 3, 1930 was made and entered in the Minutes of the Court, denying defendant's application for an award that defendant be granted custody of Ralph Elsman, Jr., a minor child of plaintiff and defendant.

"That there is no authority under the laws of the State of Nevada, for the new trial of a motion and that no appeal lies from an Order denying such motion for new trial.

"That such attempted appeal from said Order denying defendant's motion for new trial was not taken within sixty days after said Order denying said motion for a new trial was made and entered in the Minutes of the Court."

Counsel for respondent have stated the points involved on this motion as follows:

"First: Whether the appeal is taken from a final judgment in an action or special proceeding, or whether it is an appeal from a special order made after final judgment entered in the minutes of the court.

"Second: Whether or not an appeal lies from an order overruling a motion for new trial of a motion."

On May 5, 1928, the court, on application of the plaintiff, "ordered, adjudged and decreed" that the original decree be "amended, modified and changed." It further reserved the right to again alter the decree, judgment or order, or whatever it may be, whenever the best interest of the child so demands.

The determination of the motion to dismiss turns upon whether or not the order, decree, or judgment of· December 3, 1930, was an order or a judgment. If it were a judgment, the motion to dismiss must be denied.

Counsel for respondent contend that it is an order, and in support of their contention they rely strongly upon section 420 of our civil practice act, section 8909, Nev. Comp. Laws 1929, which reads: "Every direction of a court or judge made or entered in writing, and not included in a judgment, is denominated an order. An application for an order is a motion."

· The section quoted is no aid in determining the point, for the reason that it excepts an order included in a judgment.

Under the old practice, when actions at law and suits in equity were separate and distinct, the final determination of action at law was called a judgment, while in suits in equity it was designated a decree. Divorce suits were equitable in character, hence they were known as decrees. Under the code of civil ·procedure the words "action," "suit," and "judgment" are often used without any regard to their old meaning. Even in our divorce act we do not find the words "judgment" or "decree" used, but do find the words "order" and "ordered" (see sections 9462, 9463, 9464, 9465 and 9466, Nev. Comp. Laws 1929), which indicates to our

minds that the legislature was not so much interested in the word or words used to indicate its intention as to the final determination of the matters involved, as it was to direct what might or should be done.

■■ It is our impression that a judgment or decree, as the case may be, as distinguished from an order, is the final determination of the rights of the parties, whereas an order generally is a direction of the court preliminary and incidental to such final determination. There may be, of course, certain orders after final judgment, such as an order denying a motion for a new trial and a special order made after final judgment. The latter, however, is one which relates to the final judgment, either by way of enforcing or staying its operation. Kaltschmidt v. Weber, 136 Cal. 675, 69 P. 497; Watson v. Prior, 49 Cal. App. 554, 193 P. 797.

The determination of December 3, 1930, did not pertain to enforcing or staying the operation of a judgment or decree, hence we think it is not a special order made after final judgment.

■ The original decree in this cause was a final determination. The amendment of May 3, 1928, was, when entered, of equal dignity to the decree of 1927, when it was entered, and entirely supplanted the decree of 1927, as to the custody of the child. No other view can, in reason, be maintained. This being true, we think no other sound conclusion can be reached but that the determination of December 3, 1930, was a final judgment, subject, of course, to further modification, altering, or amendment, as subsequent developments may justify.

In Gury v. Gury (Cal. App.), 300 P. 81, 83, which was a case involving the custody of a child, the court says: "The authorities are clear that a change which materially affects the judgment and the rights of the parties against whom it is rendered and which involves the exercise of judicial discretion amounts to a new judgment"— citing authority.

We think this is such a case. There was a material

change affecting the rights of the parties, and the mak-, ing of the change involved the exercise of judicial discre-. tion.

The determination of December 3, 1930, being a final judgment or decree, the respondent had the right to move for a new trial and to appeal from the order, denying the same within sixty days from the day it was entered in the minutes of the court. It is the practice of the clerk to jot down, at the time an order, judgment, or decree is entered, the substance of the same, and thereafter to enter it in a formal manner in the minute book so known and designated. It appears that the court did not enter in the minute book the order denying the motion for a new trial in this matter until on or after December 28, 1930. The appeal was taken February 26, 1931, or within sixty days from such entry, which was within apt time. It follows that the motion must be denied.

It is so ordered.

## ON PETITION FOR REHEARING

October 29, 1931.                                    3 P.(2d)1071.

*Samuel Platt* and *Cooke & Stoddard,* for Appellant.

· *Thatcher & Woodburn* and *Forman & Forman,* for Respondent.

## OPINION

By the Court, COLEMAN, C. J.:

Respondent has presented his petition for a rehearing. Counsel quote from our opinion the language in which

we seek to distinguish a judgment from an order, wherein we say that a judgment is a final determination of the rights of the parties, whereas an order is a direction of the court preliminary and incidental to such final determination, and so forth.

Accepting our statement in which we sought to distinguish between a final judgment and an order, counsel contends that it must follow that the action of the court on December 3, 1930, was an order, and not a final judgment from which an appeal may be taken. In support of their contention it is said, quoting from Hunter v. Hunter, 111 Cal. 261, 43 P. 756, 31 L. R. A. 411, 52 Am. St. Rep. 180, that the allowance of alimony is an incident to an action for a divorce, and by analogy the question of the custody of children is an incident to a divorce, hence it must follow that the ruling of December 3 must be an order and not a judgment.

In Lake v. Lake, 17 Nev. 230, 30 P. 878, 879, which was a suit for a divorce and alimony, the court said: "That appellant had the right to appeal from a specific part of the whole judgment—the portion against her— without disturbing the other portions in her favor, we have no doubt."

In Lake v. Bender, 18 Nev. 361, 4 P. 711, 7 P. 74, it was held that where a divorce was first granted and subsequently the issues as to the property were determined, the court had authority to entertain a motion for a new trial as to the property rights. No motion for a new trial was made as to the divorce, but was made as to property rights. The motion was denied. An appeal was taken, and though the court recognized that the question of property rights was one incident to the divorce suit, it held that the right to move for a new trial and to appeal existed. Thus we see that our own court long ago took a position that an appeal might be taken upon that portion of a case which was incident to the main issue.

Counsel contend that the views expressed in our former opinion are contrary to our holding in Hough v. Nevada Treasure M. Co., 53 Nev. 333, 300 P. 948. We

do not think so. In that case the order appealed from was one vacating a final judgment, leaving the case standing to be tried upon the issues made by the pleadings, whereas in the instant matter such was not the fact.

Nor do we find anything in the opinion of Nevada First National Bank v. Lamb, 51 Nev. 162, 271 P. 691, 692, contrary to our previous holding. It is true that in that case we said: "It is a well-known general rule that there can be but one final judgment in a case." We thank counsel for calling our attention to the opinion mentioned. Their only mistake lies in the fact that they did not read far enough, for we quoted therein from an earlier Nevada case, Perkins v. Sierra Nevada Silver Min. Co., 10 Nev. 405, as follows: "A judgment or decree is final that disposes of the issues presented in the case, determines the cost, and leaves nothing for the future consideration of the court. When no further action of the court is required in order to determine the rights of the parties in the action, it is final; when the cause is retained for further action it is interlocutory."

Thus it appears that we recognized the correct rule to be that a judgment is final which disposes of the issues and leaves nothing for the future consideration of the court, and that when the cause is retained for further action it is interlocutory.

We cannot see why the same rule would not apply to the question of the custody of the children.

We must not overlook the fact that the practice is different in divorce suits involving the question of alimony and custody of children, than in an action at law. In the later there is no such thing as amending or modifying a judgment once rendered, except as the result of an appeal, while in divorce suits authority may be retained to modify the decree, or order as our statute calls it, as to alimony and custody of the children.

We do not wish to be understood as holding that a decree might not be modified as to the custody of children even if the authority to do so were not reserved. On this point we express no opinion.

We fail to see the force of the contention relative to the entry of the order denying the motion for a new trial. The entry of the order was a ministerial act of the clerk. In our former opinion we said the court did not enter the order, whereas we should have said the clerk did not enter it.

Petition denied.

ON MERITS

April 26, 1932.                    10 P. (2d) 963.

*Cooke & Stoddard* and *Samuel Platt,* for Appellant:

*Thatcher & Woodburn* and *Forman & Forman,* for Respondent:

## OPINION

By the Court, Coleman, C. J.:

This is a proceeding involving the custody of an infant child.

The parties were intermarried on October 22, 1923, and lived for some years at Great Neck, on Long

Island, New York. The father, to whom we will refer as plaintiff, according to often-repeated and undenied statements, is a man of great wealth. He owned a home on Long Island which cost a handsome sum. While living there the infant in question was born, on August 7, 1924. Some differences arose between the parties, and the wife left the home and went to her mother's. Their differences were composed, and a young lady entered the household as nurse for the child. Thereafter the plaintiff sought to establish his home in Nevada. He purchased a tract of land and erected thereon a magnificent house. After some persuasion, he succeeded in inducing the wife to come to Nevada and to occupy the house he had constructed. Only a few months elapsed when differences sprang up between the parties, the wife leaving the home and taking with her to Reno the child in question, Ralph Elsman, Jr. A few weeks thereafter the plaintiff brought suit for a divorce. The defendant filed an answer and cross-complaint. Upon the trial, on January 4, 1927, in which the plaintiff did not appear, the wife was awarded a divorce because of the cruel and inhuman treatment of the plaintiff. The court also found that both parties were fit, proper, and suitable persons to have the sole custody, care, and control of the minor child mentioned, but that it was for the best interest of the child that the plaintiff be awarded the custody of said minor. This finding was based upon the testimony and agreement of the defendant. It was further ordered that the defendant might have the possession of the child in Washoe County, Nevada, for one month and for two weeks at another time, annually.

In February, 1927, the plaintiff married Miss Florence Diehl, the nurse mentioned. On March 31, 1928, plaintiff filed a notice of motion to change the decree as to the custody of the child. The defendant at that time was in New York state, and she filed a counter motion. Upon the hearing of these motions the court, in May, 1928, entered an order modifying the original decree so that the defendant might only visit the child at the home of the plaintiff, at Franktown, Nevada, and not

elsewhere, unless otherwise mutually agreed, during one hour of each day of one calendar month in each and every year; said month to be designated by the defendant upon thirty days' notice to the plaintiff. Neither of the aforesaid orders were appealed from.

In the fall of 1929, the plaintiff sought to have the former order modified so as to deny to the defendant the right of visitation. Thereafter the defendant filed a motion asking for a modification of the order so as to give her exclusive custody of the child. The matter came on for hearing on February 6, 1930, and continued intermittently for many weeks, having been submitted on oral and documentary evidence, depositions, and affidavits.

On December 3, 1930, the court entered an order denying both the motion of the plaintiff and that of the defendant. However, it modified the order of May 2, 1928, being the order modifying the original decree, to the effect that the defendant be entitled to visit said child for one hour each day during the month of July of each year, at the residence of the plaintiff at Franktown, Nevada, or at his home in Reno, Nevada, under like conditions mentioned in the former order.

The defendant has appealed.

The plaintiff, in support of his petition, set forth several grounds, all of which are enumerated in his brief, but since nothing can be considered which happened prior to the order of May, 1928, we will not state his contention as to those, except where they may be said to be of such nature as to demand our consideration in connection with the alleged circumstances arising subsequent to May, 1928.

Plaintiff alleges his marriage to Florence Diehl Elsman in 1927, and that by reason of the absence of defendant and the care of the stepmother the child had come to regard the latter as his mother; that since the 4th of January, 1927, defendant had not made inquiry of any one personally as to his health or welfare, and had manifested but little interest in him, and that the child had

not retained any love or affection for the defendant; that the defendant no longer knew or understood the requirements of the child so as to give him the necessary care; that her sole interest in the minor child has been to utilize the love and affection of the plaintiff for the child to extort large sums of money from him; that defendant has harassed and annoyed the plaintiff and kept him in a nervous and unstrung condition; and that these actions on the part of the defendant have reacted upon the child, through the plaintiff.

Defendant, in her petition to modify the order, alleges that the stipulation of January 3, 1927, which was the basis of the decree of January 4, 1927, awarding the custody of the child to the plaintiff, was induced by false and fraudulent representations made by plaintiff to defendant, and the legal advice which she received at the time; that the modification of the decree of May, 1928, was entered through inadvertence and excusable neglect; that on account of the tender age of the child it would be to his best interest to be placed in the custody of the mother, for the reason that the plaintiff is of a nervous, excitable, and irritable disposition, and of a violent and ungovernable temper; that the plaintiff and Florence Diehl Elsman had conspired to deprive the defendant of the right to visit the child; that since May, 1928, the plaintiff and the child have moved from Nevada to the State of California; that since the remarriage of plaintiff two minor children have been born as issue of such marriage; that the defendant is on unfriendly terms with the present wife of plaintiff; that plaintiff has an extreme hatred for the defendant and has communicated the same to the child, and has concealed from said child the true parentage as to his mother, and has continued to wean away the affection of the child for its natural mother; and that the plaintiff has willfully and maliciously refused to comply with the order of the court in respect to the defendant's visits to the child.

The first matter which we will consider is the motion of the defendant to abate the plaintiff's motion

to modify, on the ground that he was in contempt of court, in that he had refused the defendant permission to see the child, though she had given him the required notice. While the conduct of the plaintiff in this regard, as in some other things, particularly his repeated and uncalled for insinuations while on the witness stand, does not comport with our ideals of what one situated as he was should have been, yet in view of the fact that the trial court did not see fit to take cognizance of his refusal to comply with the order, and in view of the record as a whole, we are of the opinion that we should not inflict a penalty for a violation of that court's order.

■ It is next contended that the court erred in admitting in evidence a letter written to the plaintiff by one D. Philip MacGuire, in which he suggested to the plaintiff that he thought that for a sum of money he could bring about a settlement of the controversy as to the custody of the child. We think the court erred in admitting this letter in evidence, for, though it appears that MacGuire is a relative of the defendant and had been one of her advisors, there is nothing in the record to indicate that he had any authority from the defendant to make such a proposal. Indeed, in the letter he disclaimed any such authority; furthermore, the defendant had repeatedly signified and we are convinced that money was not the motivating cause in her contest over her right to have access to the child and to his custody at times. Whether the ruling was prejudicial remains to be determined.

The next point goes to the proposition that the court unduly restricted the cross-examination of the plaintiff. We have carefully examined the record in this connection and are of the opinion that the court not only did not err, but that its ruling on the point was clearly right. In fact, the matter sought to be gone into was one upon which both sides were agreed. It was not in issue. The so - called cross - examination which counsel desired to make was not cross-examination at all, as no testimony had been given on direct examination on the point.

■ We enter upon the consideration of this matter

upon its merits with a solemn adjudication of the lower court to the effect that both parties are fit, proper, and suitable persons to have custody of the child. Such determination is conclusive as to the conditions then existing, and should not be altered unless there has been a change of conditions which make it necessary for the welfare of the child that the last-mentioned order be modified. This rule of law is overwhelmingly established by authority, and the considerations leading to such conclusion seem unanswerable in reason. Milner v. Gatlin, 143 Ga. 816, 85 S. E. 1045, L. R. A. 1916B, 977; Dawson v. Dawson, 57 W. Va. 520, 50 S. E. 613, 110 Am. St. Rep. 800; Weatherton v. Taylor, 124 Ark. 579, 187 S. W. 450; Jewett v. Jewett, 73 Mont. 591, 237 P. 702; Griffin v. Griffin, 95 Or. 78, 187 P. 598; Crockett v. Crockett, 132 Iowa, 388, 106 N. W. 944; Bates v. Bates, 166 Ill. 448, 46 N. E. 1078; Bryan v. Lyon, 104 Ind. 227, 3 N. E. 880, 54 Am. Rep. 309; Raily v. Raily (Ky.), 66 S. W. 414; Flory v. Ostrom, 92 Mich. 622, 52 N. W. 1038; Eckhard v. Eckhard, 29 Neb. 457, 45 N. W. 466; 19 C. J. 350; 9 R. C. L. p. 476; see note to Averbuch v. Averbuch, Ann. Cas. 1916B, 894.

In determining the question of the custody of a child, the sole consideration of the court should be its welfare. Atkins v. Atkins, 50 Nev. 333, 259 P. 288; 9 R. C. L. p. 475; 19 C. J. 343. In fact, our statute settles this question. It provides: "The court * * * shall make such disposition of, and provision for, the children, as shall appear most expedient under all the circumstances, and most for the present comfort and future well-being of such children." (Section 9462, N. C. L.)

The section just mentioned also provides that the court upon good cause shown, may change the custody of a child.

Do the developments subsequent to May 2, 1928, warrant a change of custody of the child?

The record in this case is very voluminous and precludes a consideration of it at length; nor do we deem it advisable to quote or comment upon it at length.

We cannot find in the record a scintilla of evidence

justifying even a suspicion that the defendant lost her love and affection for the child, or that she sought to extort money from the plaintiff. On the other hand, the record shows conclusively that at no time did she undertake the latter. When an offer of money was made to relinquish her claim, she spurned it.

We think the contention that the defendant's action in seeking to see the child, at the times she gave notice of her intention to visit him, harassed and annoyed the plaintiff and kept him in an unstrung nervous condition, which reacted upon the child, is without merit. She had a legal right to give such notices, and, while they may have come at inopportune times for the plaintiff, there is no evidence to justify the conclusion that there was any design on the part of the defendant to harass or annoy him. The evidence of Dr. Emge, the plaintiff's own witness, clearly shows his temperament, and the evidence of the three specialists called on behalf of the defendant tends to sustain the contention of the defendant that the plaintiff is not of such temperament as to best promote the welfare of the child; but since it does not appear that this condition did not prevail prior to May, 1928, we think we are precluded from pursuing that line of inquiry.

As to the contention that the child has not retained any love or affection for the defendant, conceding it to be true, it may be accounted for because of its extreme youth and the infrequency of its contact with her, for which she reasonably accounts, and the failure of the plaintiff and Florence Diehl Elsman to instruct it as to its real maternal parentage.

If we were to concede that the defendant were misled in entering into the agreement of January 3, 1927, which resulted in the decree of the following day, we fail to find anything in the showing made justifying the modification of the order on that ground. Nor do we find any showing of excusable neglect relative to the order of May 2, 1928. In fact, neither of these contentions is seriously urged.

As to the suggestion that the tender age of the child

is a ground for changing the custody of the child, it may be said that he was, at the time of defendant's application to modify, nearly four years older than when the original decree was entered, and, hence, whatever force there might be to the contention, were the case up for consideration on appeal from an original decree, is of no weight in view of the original decree and subsequent order.

■ The fact that Florence Diehl Elsman is unfriendly to the defendant does not go to affect the welfare of the child. She might be dominated by the most malignant hatred for her, and yet may have centered her devotion upon and consecrated her life to the mental, physical, and moral development of the child. It is claimed that she and plaintiff have sought to poison the mind of the child against its real mother. As to this we must assume that the lower court found to the contrary. The plaintiff testified that it had always been his attitude in the past and that it would be in the future to raise the child to respect its mother.

If it develops at any time in the future that the plaintiff and his present wife are poisoning the mind of the child against its mother, an application may be made to modify the order. Meffert v. Meffert, 118 Ark. 582, 177 S. W. 1; Bedolfe v. Bedolfe, 71 Wash. 60, 127 P. 594.

■■ Looking at this matter as we do, we can see no theory upon which it can be said that the error in admitting in evidence the MacGuire letter could have prejudiced the lower court. The defendant was in no way shown to have authorized it or to have known of its being sent. The only purpose of such evidence could be to show that the defendant was endeavoring to extort a large sum of money from the plaintiff. As we have pointed out, the defendant, when approached along this line, spurned the offer of money. However, even if she had sought to obtain money from the plaintiff, that fact would not necessarily affect the determination of what was for the welfare of the child, which is the real question in this proceeding.

We think the rule applicable to this situation was

expressed by this court in Rehling v. Brainard, 38 Nev. 16, 144 P. 167, 169, Ann. Cas. 1917c, 656, as follows: "We think a rule sufficiently established and worthy of adherence is applicable here, i. e., where incompetent evidence is admitted in a trial of a cause by a court sitting without a jury, a reversal is only warranted when it is apparent from the record that the competent evidence was insufficient to support the judgment, or when it is affirmatively shown that the improper evidence affected the result. Miller v. Foster, 28 Okl. 731, 116 P. 438; Gernert v. Griffin, 28 Okl. 733, 116 P. 439."

The great mistake made in this case, if any has been made, was the entering of the original decree. Yet we feel that no criticism can be justly leveled at the defendant in that connection.

■ In view of the fact that the defendant is a nonresident, we cannot say that the fact of the taking of the child to California by the plaintiff justifies a change in the custody of the child. But it has been held that the parent having custody of the child should not take it out of the state having jurisdiction, and if in the future the plaintiff fails or neglects to have the child in the state for visitation in compliance with the order of the court and notice from the defendant, it might be a ground justifying serious consideration.

■ A very large discretion is vested in the trial court in matters of this kind, and its orders should not be lightly overturned. 9 R. C. L. p. 475; Jewett v. Jewett, 73 Mont. 591, 237 P. 702.

In considering such matters, the welfare of the child being the sole consideration, it is obvious, as said in Campbell v. Campbell, 96 N. J. Eq. 398, 130 A. 361, that "a 7-year old child ought not to be harassed by shifting her from one parent to the other for any considerable length of time."

And in Bennett v. Bennett, 200 Iowa, 415, 416, 203 N. W. 26, 27, it was sagely said:

"Experience has shown that allowing the child to live a part of the time in one household, and a part of

the time in another, is not only not to the best interest and welfare of the child, but in many instances it is wholly destructive of discipline. It also shows that the party who has the child for the short time in some instances sows seed of discontent, inculcates a spirit of dissatisfaction and rebellion against authority in the child, and devotes the whole time that the child is with that person in trying to wean the child away from the other party in whose custody it is placed by the decree, and [that the situation] is not for the best interest and welfare of the child, which, as said, should be the fundamental basis on which an order in such matters is founded.

"We do not seek to penalize this appellee for her conduct which resulted in the granting of a divorce to her husband. Neither do we lose sight of the affection which she possibly bears for this child, but it does seem to us that the best interest and welfare of the child requires that it be not taken away from the home and control of the appellant for two months out of each year. On the other hand, we feel that the mother should have the option of visiting the child under reasonable circumstances and conditions, and, if conditions have arisen since the original decree which make the arrangement under that decree unsatisfactory, the lower court would be warranted in making an order changing the place, times, or conditions under which the mother might visit the child. * * * "

If we were to lay aside the principles of law involved in this case and permit ourselves to be dominated by sentimental considerations alone, we would not hesitate in changing the order appealed from, but, viewing the record from a judicial standpoint, and animated as we try to be by judicial considerations alone, we can reach no other conclusion but that the order appealed from should be affirmed, and such is our order.