ROGER E. HILDAHL, Appellant, *v.* GLENDA L. HILDAHL, Respondent.

No. 10220

October 15, 1979                    601 P.2d 58

*Bissett & Logar,* Reno, for Appellant.

*Hibbs & Newton,* Reno, for Respondent.

## OPINION

By the Court, MOWBRAY, C. J.:

Appellant Roger E. Hildahl and respondent Glenda L. Hildahl (the parties will be referred to hereinafter by their first names) were divorced on March 24, 1977. The divorce decree incorporated and approved a property and support settlement agreement, with its amendments, which had been entered into by the parties. Under the terms of the agreement, the three minor children of the parties were placed in the custody of Glenda. Roger was granted the right to have the children visit his home for a minimum of one month during summer vacation and for specified periods at Christmas and Easter. Roger was required to pay Glenda nonmodifiable alimony and an additional $750.00 per month "for her support and maintenance, and for the support, care, education, and maintenance of the minor children." This support obligation was to decrease by one-third upon the death, marriage, emancipation, attainment of eighteen years of age, or completion of a high school education of each of the children. The agreement also provided that Roger would convey the family home to Glenda.

On or about June 10, 1977, Mark, the son of the parties, moved into Roger's home. Roger thereupon withheld $250.00 per month from the support payments due for the months of June and July, and $474.50 from the payment due for August. Glenda's attorney requested Roger to provide the legal description of the family home (which, as counsel admitted during oral argument, is a matter of public record) in order that a deed could be drawn, but Roger did not comply.

On August 1, 1977, Glenda filed a Motion for Judgment for Arrearages and Petition for Order to Show Cause, requesting a judgment for the amounts withheld from the June and July payments and an order directing Roger to show cause why he should not be held in contempt of court for failing to make the full payments and for not transferring the family home or furnishing its legal description to Glenda's counsel. Upon service of the order to show cause, Roger sent the deed to the property to Glenda's attorney.

At the hearing on Glenda's motion, Roger testified that he had in fact reduced the payments for June, July, and August.

He testified that he had made the deductions because "I had custody of my son, and it was under circumstances which I had no reason to believe was not going to be permanent." Under questioning by Glenda's attorney, Roger initially characterized Mark's sojourn with him as a change in custody, effected with Glenda's consent, but in response to a question as to whether he had been exercising his visitation privileges with Mark during the summer, he answered in the affirmative. Roger's counsel attempted to have him testify as to the amounts he had expended on Mark during the summer, but an objection to the testimony as irrelevant was sustained.

On the day of the hearing, Roger filed a motion to modify the decree of divorce by awarding custody of Mark to him.

The district court entered judgment for Glenda for the arrearages and held Roger in contempt of court for reducing his payments and for his delay in furnishing the property description to Glenda's counsel. Roger was sentenced to serve two days in the county jail for the contempt, and the sentence was suspended on the condition that he comply with the court's order to pay the arrearages. Roger has appealed both the judgment for the arrearages and the contempt order. We affirm the judgment of the district court.

The applicable rule is stated in Day v. Day, 82 Nev. 317, 320-21, 417 P.2d 914, 916 (1966): "[p]ayments once accrued for either alimony or support of children become vested rights and cannot thereafter be modified or voided." *Accord,* Norris v. Norris, 93 Nev. 65, 560 P.2d 149 (1977). The payments in the instant case fell due, but were reduced by what Roger considered to be the proportion owing on account of Mark. It is clear that a party is not free to modify his obligations under a decree of divorce in this fashion. For Roger to proceed on the assumption that the support payments were intended solely for expenditures for the children, and not for the mother's fixed costs as well, was unjustified by the terms of the decree. The order provided for both fixed monthly support payments and liberal visitation privileges. We do not presume, nor do we read the decree to imply, that the father was thereby granted the right to deduct his expenditures while the child was visiting him. *See* Lindsay v. Lindsay, 52 Nev. 26, 280 P. 95 (1929).

Roger contends, however, that he was not merely exercising his visitation privileges but had taken custody of Mark. Our review of the record, however, reveals no indication that this

was the case. Roger asserted, in his testimony before the district court, that he had assumed permanent custody of his son with the consent of Glenda and that "[t]here was no time limit put on the time that I would have custody of Mark." Beyond this statement, no evidence of Glenda's consent was introduced. The district court, in awarding the arrearages to Glenda, recognized that, under the terms of the divorce decree, custody of Mark was still legally in Glenda. Although it has been held in this state that custody is a personal privilege which may be waived by the parent granted custody by the court, In Re Foster's Estate, 47 Nev. 297, 304, 220 P. 734, 736 (1923), as long as the welfare of the child is served, Elsman v. Elsman, 54 Nev. 20, 2 P.2d 139 (1931), we perceive no basis for the assertion that Glenda waived her right to custody of Mark. The district court could have inferred merely from the fact that Glenda filed an action for arrearages that she had not, in fact, consented to a change in custody. On the slender record before us, we cannot disturb the district court's implied finding that Glenda was entitled to the full payments specified in the divorce decree by reason of her custody of Mark.

Roger further argues, however, that he should be entitled to an "equitable setoff" of the amounts he actually expended on Mark while he was living with him (or, as Roger puts it, in his "de facto custody"). If by this Roger means that he is entitled to deduct from his support payments the amount of his expenditures while he is exercising his visitation rights, we cannot agree. The decree specifies monthly payments of certain sums, and it is bare of any suggestion that those sums could be reduced while the children were visiting their father. *See* Lindsay v. Lindsay, *supra*. Furthermore, since the payments were for Glenda's "support and maintenance" as well as that of the children, we are unable to see how Roger would be authorized to reduce his payments by the full amount he expended on the children in any case.

Roger cites a multitude of cases from other jurisdictions in support of his entitlement to an equitable setoff. *See generally* 47 A.L.R.3d 1031 (1973). We do not consider them controlling here. They deal with two different kinds of situations: those in which the parent granted custody by the court expressly or impliedly consented to transfer custody to the other parent, and to a consequent reduction in the support payments; and those in which the "compulsion of circumstances" compelled the change in custody, in the interest of the child, and it would be inequitable to force the parent who took the child in such a

case to pay the support due to the parent who could not, or would not, retain custody.

The instant case is not one, however, in which there is credible evidence of consent to a change by the parent granted custody. Glenda did not impliedly acquiesce in the reduction in support by waiting several years to file a claim for arrears, Meyer v. Meyer, 493 S.W.2d 42 (Mo.App. 1973), nor was there an express agreement, written or oral, *see* In Re Swall, 36 Nev. 171, 175–76 (1913), that custody could be changed and the payments reduced, Souran v. Souran, 80 Misc.2d 476, 363 N.Y.S.2d 511 (1975); Strum v. Strum, 317 N.E.2d 59 (Ill.App. 1974). Neither do we find the sort of "compulsion of circumstances" in the instant case as when the parent with custody "abandons" the child to the other parent, Caraway v. Caraway, 321 So.2d 405 (La.App. 1975), or when the mental instability or physical illness of the custodial parent compels an immediate change in custody, Headley v. Headley, 172 So.2d 29 (Ala. 1964); Chapman v. Chapman, 161 P.2d 917 (Or. 1945); Silas v. Silas, 300 So.2d 522 (La.App. 1974).

---

Our statutory scheme provides for orderly modification of child custody provisions in divorce decrees, NRS 125.140(2), and for the modification of child support provisions, *id.,* and alimony, NRS 125.150(5). When, as in the instant case, the court granting the divorce has approved a child custody arrangement and a method of support payments, "[t]he seeds of further controversy may be sown when that method is unilaterally departed from." Day v. Day, 82 Nev. at 328, 417 P.2d at 920 (THOMPSON, J., concurring). It is the policy of the statute to have modifications of divorce decrees submitted to the court for approval to minimize precisely the sort of dispute arising in the instant case. We therefore hold that, absent credible evidence of an agreement between the parties to modify the terms of a support agreement, or compelling circumstances which require a change in custody, before judicial approval is sought, in the interest of the child, a parent making expenditures for a child of whom he does not have custody is not entitled to a setoff of those amounts against his support obligations. It follows that the district court did not abuse its discretion, under NRS 125.180(1), in awarding judgment to Glenda for arrearages.

---

The use of the contempt power to enforce the provisions of a divorce decree has been approved many times in this state. *E.g.*

Lamb v. Lamb, 83 Nev. 425, 433 P.2d 265 (1967); Ex parte Phillips, 43 Nev. 368, 187 P. 311 (1920); Phillips v. Phillips, 42 Nev. 460, 180 P. 907 (1920). NRS 22.010(3) includes in the acts or omissions constituting contempts, "[d]isobedience or resistance to any lawful writ, order, rule or process issued by the court or judge at chambers." The divorce decree, which set out the schedule of Roger's support obligations, and which incorporated and approved the provision for conveyance of the family home in the settlement agreement, was an order of the court within the meaning of the statute. Roger's unilateral modification of his performance of that order was a violation of the decree, and the district court properly held him in contempt.

In a case such as this, when a contempt citation is issued apparently in order to ensure compliance with a court order, the process is coercive in nature rather than punitive. Phillips v. Welch, 11 Nev. 187 (1876). Our statute provides that if "the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he shall have performed it . . . ." NRS 22.110. Although in the instant case, the district court sentenced appellant to a specific jail term, the fact that the sentence was suspended on the condition that Roger pay the arrearages indicates that the contempt was designed to coerce his performance, and was therefore proper. Thus we need not reach any question of whether Roger's delay in providing the deed, which he had supplied prior to the hearing, was a violation of the terms of the decree, and whether contempt was an appropriate sanction in that respect.

Affirmed.

Thompson, Gunderson, Manoukian, and Batjer, JJ., concur.