### ANDREA OAKLEY *v.* LARRY OAKLEY

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE No. 203262
HARTFORD-NEW BRITAIN AT NEW BRITAIN

Memorandum filed August 1, 1983

*Januszewski, McQuillan & DeNigris,* for the plaintiff.

14

*Pearl & Robertson,* for the defendant.

BIELUCH, J. Upon motion of the plaintiff wife the defendant was cited to appear in court and show cause why he should not be found in contempt for failure to comply with an order entered in the decree dissolving the marriage of the parties.

On March 15, 1977, the parties executed a separation agreement. Thereafter, on March 18, 1977, the court entered a decree dissolving their marriage. Paragraph 5 of the separation agreement was incorporated in the judgment as an order "that the defendant shall assume full responsibility for and shall pay a debt with a present balance of $6,705.20 due to Veronica Szelenyi presently residing at 203 Somerset Road, Berlin, Conn. The defendant shall pay said sum in weekly installments of $50 commencing on Friday, April 1, 1977, and on each Friday thereafter until paid. All payments shall be mailed to the said Veronica Szelenyi at her address recited above or at any other place designated by her in writing." Pursuant to paragraph 2 of the separation agreement which recited that "she will not seek alimony," the plaintiff, with full understanding that she would thereby be barred from any future order of alimony, specifically disclaimed her right to alimony at the dissolution hearing. Therefore, no order for alimony was entered at the time of the decree.

On July 7, 1980, the defendant filed a petition in bankruptcy under title 11, United States Code. Veronica (Szelenyi) Charmut was listed as a creditor holding an unsecured debt dated March 15, 1977, the date of the separation agreement, in the amount of $2700. The plaintiff was not listed as a creditor. On September 9, 1980, the defendant was discharged in bankruptcy from all "debts dischargeable under 11 U.S.C. § 523." The defendant thereafter ceased to

make payments to Szelenyi, thus exposing the plaintiff to her repayment obligation under the joint loan of the parties. For that reason the defendant has now been cited into court for contempt in failing to comply with the court order to pay this debt in the stated balance of $2905.20.

The basic issue here is whether the court order affirming the defendant's agreement to pay the joint obligation of the parties to Szelenyi was released by the defendant's discharge in bankruptcy. The answer to this question lies in a determination of the nature of the court order, since debts to a former spouse "for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement," are not dischargeable, while other obligations arising from property settlement agreements or court orders are dischargeable under bankruptcy law. 11 U.S.C. § 523 (a) (5).

The plaintiff maintains that the court order for payment of the joint debt of the parties is "lump sum alimony" or "alimony/maintenance," rather than a property settlement, and "is not affected by the discharge in bankruptcy." The sole authority relied upon by the plaintiff is the decision in *In re Konecny,* Bankruptcy No. H-79-74, United States Bankruptcy Court, District of Connecticut, entered on June 13, 1980.[1]

*Konecny* is inapposite to the present case by reason of its facts. There the parties had executed a separation agreement in which the plaintiff husband agreed to hold the defendant wife harmless from three joint bank loans expressly "as and for alimony," and agreed that the loans would be paid or released as to the wife

---

[1] *In re Konecny,* was decided under § 17a (7) of the National Bankruptcy Act of 1898. We are here concerned with § 523 (a) (5) of the Bankruptcy Reform Act of 1978, which became effective on October 1, 1979.

before the final divorce hearing. Subsequently, judgment was rendered for a decree of divorce. The judgment incorporated the separation agreement in the decree as a part of the order of the court. It also ordered in its own terms that the husband "shall pay, as alimony," the three bank loans and hold the wife harmless therefrom. After observing that the separation agreement "specifically characterizes the obligation '*as and for alimony*,'" and that the divorce decree adopted "the characterization of the parties when it requires that 'the defendant shall pay, *as alimony*, the loans,'" the bankruptcy court concluded "that the debts at issue were incurred for 'alimony . . . maintenance or support' and are nondischargeable under § 17a (7) [of the Bankruptcy Act of 1898]."

The defendant argues that the court should look to the nature of the underlying obligation in determining whether his debt is dischargeable in bankruptcy, and further, that unlike the characterization by the parties and by the divorce court in *Konecny* of the husband's obligation as "alimony," the plaintiff wife here agreed that she would not seek alimony and thereafter renounced and gave up any claim to alimony at the dissolution hearing.

A lead to the direction this court should take is found in *Stoutenburg* v. *Stoutenburg*, 285 Mich. 505, 281 N.W. 305 (1938). In that case the plaintiff wife obtained a decree of divorce from her husband. The home of the parties, jointly held, was awarded to the plaintiff, and the defendant was ordered to pay to her in monthly installments of $40, the sum of $465, which amount was one-half of the $930 mortgage debt then outstanding against the property. The defendant paid only $345 under the decree, leaving $120 due the plaintiff toward payment of one-half of the mortgage. Thereafter the husband was adjudged a bankrupt and obtained a discharge in bankruptcy of this obligation. After being

found in contempt by the court for failing to make payments of "alimony," he appealed. The Supreme Court of Michigan set aside the order of contempt, holding (p. 510): "Defendant could not be adjudicated in contempt for failure to pay this amount, because it was obviously in the nature of a property settlement and was not alimony."

Further direction may be found in *Fife* v. *Fife,* 1 Utah 2d 281, 265 P.2d 642 (1954). In *Fife,* the plaintiff wife was granted an annulment of her marriage to the defendant and was awarded certain jointly owned property. At the same time, the defendant was ordered to pay designated creditors having claims against the property. He failed to make those payments and was cited to show cause why he should not be held in contempt. On the day before the contempt hearing, he began bankruptcy proceedings and listed those debts. The following day he was adjudicated a bankrupt. Six months later he was again cited for punishment for contempt. The court did not find him in contempt, but instead rendered judgment against him and in favor of the plaintiff for the amount she had been forced to pay the creditors in the meantime. On appeal, the Supreme Court of Utah held (p. 282) "that the judgment entered after the adjudication evidenced a provable claim in bankruptcy, that it was 'in esse' prior to the adjudication, not within the 'exception to discharge' language of Sec. 17 of the Act, 11 U.S.C.A. § 35, and not a claim of such nature as not to be provable in bankruptcy, and consequently the state court was without authority to enter such judgment."

The final and definitive authority on this issue is the case of *In re Lang,* 11 B.R. 428 (1981). In *Lang,* the New York Supreme Court had awarded counsel fees in three divorce proceedings to the respective petitioners' attorneys under that state's domestic relations law. The defendants thereafter contested those orders

after filing bankruptcy petitions. The parallel issue in each case was the dischargeability of the obligation for attorney's fees to the former wife and to her attorney under the provisions of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 523 (a) (5).

Under New York law, the bankruptcy court recognized (p. 429) "that an award of attorney's fees may be essential to a spouse's ability to carry on or to defend a matrimonial action or proceeding" and, therefore, was "in the nature of alimony or support." The court concluded, however, that the local law was not controlling, holding (p. 430) as follows: "While New York may view the award as being in the nature of alimony, it is abundantly clear that in the context of a bankruptcy case this is a federal and not a state question. The House and Senate Reports which accompanied H.R. 8200 and H.R.S. 2266 and which described this subsection as it subsequently was enacted state that . . . '[t]his language . . . will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent . . . . *What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law.* Thus, cases such as *In re Waller,* 494 F.2d 447 (6th Cir. 1974) . . . are overruled, and the result in cases such as *Fife* v. *Fife,* 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.' " (Emphasis in original.) Quoting from *In re Knabe, Bennett* v. *Knabe,* 8 B.R. 53, 56, 7 BCD 185 (Bkrtcy., S.D. Ind. 1980), the *Lang* court further

observed (p. 431): "Congress mandated the bankruptcy courts to disregard state law in this area only where a state defines alimony or support so broadly that it includes property settlement."

The court in *Lang* thereafter concluded (pp. 431–32) that an award of reasonable attorney's fees was in the nature of alimony within the meaning of 11 U.S.C. § 523 (a) (5) and not dischargeable in bankruptcy. On the other hand, it also found that the awards payable directly to the wives' attorneys were discharged under the explicit provisions of § 523 (a) (5) (A), which makes dischargeable alimony to, maintenance for, or support of a spouse or child "to the extent that — (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise," the court orders for direct payment to the attorneys being "tantamount to an assignment by operation of law of the spouse's right to payment of the award to her attorney and a recovery by the attorney thereon." In its final analysis, however, the court concluded (p. 432): "To the extent that a recovery by the attorney is not possible due to bankruptcy and to the extent that she, therefore, remains liable to her attorney, she, by indemnity or subrogation, would succeed to her original rights. Thus, in her hands the obligation would remain nondischargeable."

In view of the foregoing principles of bankruptcy law as applied to the facts in this case, the court is led to the conclusion that the defendant's assumption of full responsibility for the joint debt of the parties to Szelenyi by the terms of the separation agreement and the following court order for its payment by the defendant was a property settlement of joint financial obligations, and not the payment of alimony to, maintenance for, or support of the plaintiff, who expressly disavowed any claim for alimony. Consequently, the defendant's indebtedness to Szelenyi under the court's order for payment in full of the debt due her did not fall within

the exception to discharge provided under § 523 (a) (5) of the Bankruptcy Act and was, therefore, a provable claim in bankruptcy discharged under the law.

The court finds, accordingly, that the defendant is not in contempt of the court's order for payment to Szelenyi and the plaintiff's motion for contempt is denied. The court does not by this ruling in any way express or intimate its opinion on the contractual obligation of the defendant to the plaintiff under the separation agreement, this indebtedness not having been scheduled in the claims filed by the defendant in the bankruptcy court.