[No. 9097-3-III.   Division Three.   May 23, 1989.]

*In the Matter of the Marriage of* MARY JEAN MYERS,
*Respondent, and* EDWARD R. MYERS,
*Appellant.*

*Jerry Sorlien,* for appellant.

*Ronald McAdams* and *McAdams, Ponti & Junke,* for respondent.

SHIELDS, J.—Edward R. Myers appeals a modification of spousal maintenance in the decree of dissolution of his marriage to Mary Jean Myers. The primary question presented is whether the court erred in considering creditor collection efforts against Mrs. Myers for debts Mr. Myers was obligated by the dissolution decree to pay but which he discharged in bankruptcy. We affirm.

The decree dissolving the parties' 12–year marriage was entered December 23, 1985; a supplemental decree dividing their property and providing maintenance for Mrs. Myers was entered February 28, 1986. Each party was awarded their personal property and one–half interest in the net proceeds of the family home. Mr. Myers was required to pay, and hold Mrs. Myers harmless from, the parties' community indebtedness of approximately $17,130. She was awarded the couple's 1980 Buick automobile. He was required to pay the balance due on it from his retirement pension. He was also required to pay $475 monthly maintenance for 5 years, commencing January 1986, and $1,600 toward her attorney fees.

On April 1, 1986, Mr. Myers filed a Chapter 7 petition in the United States Bankruptcy Court for the Eastern District of California to discharge the debts he was required to pay by the dissolution decree. Mrs. Myers then sought an order amending the decree or holding Mr. Myers in contempt for failing to comply with it. That motion was denied by the court because Mr. Myers' obligation to pay the parties' debts was part of the property division. Mr. Myers was discharged of the debts in bankruptcy.

Mrs. Myers then brought this motion to modify spousal maintenance, introducing evidence of collection efforts and lawsuits filed against her over the discharged debts. She also introduced evidence the Buick had been repossessed for nonpayment and she had to purchase another automobile to replace it. Based on the affidavits and evidence submitted, the court found Mrs. Myers' monthly net income had increased as anticipated at the time of the dissolution to $910; however, her reasonable living expenses were $1,207.50. Her projected payments to creditors, without including many of the creditors making claim, totaled at least $445 per month.

On the other hand, the court found Mr. Myers' gross income was $2,760 per month. Because of his bankruptcy discharge, he had been relieved of substantial debt. He had

also remarried and his new wife contributed weekly gross community income of $378.

The court concluded:

## II.

There has been a material change in circumstances not contemplated by the Court regarding the needs of Petitioner. She is without the debt free car contemplated by the Court, she is being pursued by the creditors from who Respondent obtained discharge, her attorney fees have increased, and, generally, her expenses are higher and are not being met by her full–time income.

## III.

There has been a material change in circumstances not contemplated by the Court in terms of Respondent's ability to pay. This change is the result of his discharge from substantial debts, his increased income from his employment, and his remarriage to a wife who has income to contribute to the community and the needs of the community.

## IV.

Based upon the change in needs and ability to pay, the Court concludes that spousal maintenance should be increased by $325.00 per month, for total spousal support of $800.00 per month, effective beginning with the payment for January 1988, and continuing each and every month thereafter for the remaining three years of the five year period for which maintenance was awarded.

Mr. Myers contends the court erred in considering any evidence relating to debts he discharged in bankruptcy as a basis for modifying spousal maintenance. He summarizes his argument as follows:

The ex–husband was granted relief from liability on the debts of the parties pursuant to the provisions of the U.S. Bankruptcy Code. His obligation to hold the ex–wife harmless from those debts was not in the nature of maintenance. Therefore, the obligation owed to the ex–wife was also discharged as a matter of federal law. Due to the "fresh start" to be afforded to a debtor by a discharge in bankruptcy, the maintenance payable to the ex–wife should not be increased in order to allow the ex–wife to pay those same debts with the ex–husband's

money. To do so would be contrary to the Bankruptcy Code and in violation of the Supremacy Clause.

We agree the bankruptcy code precludes Mr. Myers from being recharged with debts he discharged in bankruptcy. However, we do not agree the court is prohibited from considering Mr. Myers' bankruptcy discharge and the subsequent collection efforts against Mrs. Myers as a substantial change in circumstances affecting her needs and his ability to pay justifying a modification of spousal maintenance.

Federal preemption applies when state law does "major damage" to "clear and substantial" federal interests or "sufficiently injure[s] the objectives of the federal program to require nonrecognition." *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 583, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979). *See also Rose v. Rose,* 481 U.S. 619, 95 L. Ed. 2d 599, 107 S. Ct. 2029, 2033 (1987). Bankruptcy relief attempts to provide the debtor with a fresh start "'unhampered by the pressure and discouragement of preexisting debt.'" *Perez v. Campbell,* 402 U.S. 637, 649, 29 L. Ed. 2d 233, 91 S. Ct. 1704, 1711 (1971). To this end, 11 U.S.C. § 727(b) provides a bankruptcy order discharges the debtor from all debts arising prior to the order. 11 U.S.C.A. § 524(a) (Supp. 1989) prohibits collection efforts on those debts. It states:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the

commencement of the case, on account of any allowable community claim, . . .

It is clear from this section that Mr. Myers cannot be recharged with debts which became his sole obligation as part of a property settlement but which were later discharged in bankruptcy. Nor could Mrs. Myers, who was named as a creditor in the bankruptcy proceeding, enforce the provision in the dissolution decree holding her harmless from those debts. This court is bound by the bankruptcy laws and any claims of nondischargeability must be made to the bankruptcy court. *See Macy v. Macy,* 714 P.2d 774 (Wyo. 1986).

However, the discharge provisions do not apply to any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . ." 11 U.S.C.A. § 523(a)(5) (Supp. 1989). As early as 1904 in *Wetmore v. Markoe,* 196 U.S. 68, 77, 49 L. Ed. 390, 25 S. Ct. 172, 175–76 (1904), the Court explained the policy behind this exception:

> The bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce. Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive and to permit him to have a fresh start in business or commercial life, freed from the obligation and responsibilities which may have resulted from business misfortunes. Unless positively required by direct enactment the courts should not presume a design upon the part of Congress in relieving the unfortunate debtor to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children.

Federal courts generally defer issues concerning support and maintenance obligations to state courts. Illustrative

cases are: *In re Mac Donald,* 755 F.2d 715, 717 (Bankr. 9th Cir. 1985); *In re Weidenhammer,* 82 Bankr. 383 (Bankr. E.D. Pa. 1988); *In re Bruggen,* 82 Bankr. 515 (W.D. Mo. 1987); *In re Davidson,* 72 Bankr. 384 (Bankr. D. Colo. 1987). *See also* 69 A.L.R. Fed. 403 (1984). This policy also applies to modification of support or maintenance. *See In re Danley,* 14 Bankr. 493 (Bankr. D.N.M. 1981), which involved an increase in maintenance by the amount of the discharged debts. The court observed such an order may frustrate the fresh start policy of the bankruptcy code. Nevertheless, it held:

> But there are many situations which Congress has indicated have priority over a fresh start for debtors. Section 523 of the Bankruptcy Code contains an extensive catalogue of nondischargeable debts. One such enumerated exception to discharge is a support obligation either for children or for a former spouse. 11 U.S.C. § 523(a)(5) (1978). The imposition of additional support obligations by a state court judge who has carefully retained jurisdiction to do so should be properly understood as just one more exception of those kinds of debts Congress considered more important than the fresh start.

*Danley,* at 495.

■ Considering postbankruptcy changes in financial relationships does not necessarily result in or frustrate the bankruptcy code's fresh start policy. *See, e.g., In re Marriage of Williams,* 157 Cal. App. 3d 1215, 203 Cal. Rptr. 909 (1984); *In re Marriage of Clements,* 134 Cal. App. 3d 737, 184 Cal. Rptr. 756 (1982); *Kruse v. Kruse,* 464 N.E.2d 934 (Ind. Ct. App. 1984); *Hopkins v. Hopkins,* 487 A.2d 500 (R.I. 1985); *Beckstead v. Beckstead,* 663 P.2d 47 (Utah 1983); *Eckert v. Eckert,* 144 Wis. 2d 770, 424 N.W.2d 759 (Ct. App. 1988); *Macy v. Macy, supra.* The ultimate decision to modify maintenance must be based upon a substantial change in the needs of the spouse receiving maintenance and the ability of the other spouse to pay. *See Wagner v. Wagner,* 95 Wn.2d 94, 98, 621 P.2d 1279 (1980); *Lambert v. Lambert,* 66 Wn.2d 503, 508, 403 P.2d 664

(1965). In *In re Marriage of Clements, supra* at 745–46, the court stated bankruptcy is one of many facts to consider.

> [I]n establishing an adequate amount of spousal support . . . a court can consider everything having a legitimate bearing on present and prospective matters relating to the lives of both parties. Some of the circumstances that are applicable to the case at bar are the needs of the parties, the abilities of the parties to meet such needs, property owned, obligations to be met, as well as the ability to earn and actual earnings.
>
> Proper grounds may always be presented for the purpose of modifying or revoking an award of spousal support. But the applicant must show the economic situation of the parties has changed since it is the economic relation which is to be affected by the proposed modification. In the instant case, the material change in the economic status of the parties was that the spouse to whom the support had been awarded had significantly reduced her indebtedness through bankruptcy which concomitantly increased the obligations to be met by the nonbankrupt spouse. The fact that a spouse has incurred indebtedness may indicate such a change in his ability to pay support as to authorize a reduction in the amount of support payments.

(Citations omitted.)

Here, the court properly exercised its discretion by considering the bankruptcy discharge as a factor changing the economic circumstances of the parties. To modify spousal maintenance, the court must have before it all the facts relevant to the parties' present financial circumstances. We, therefore, conclude the court did not err in considering the bankruptcy discharge and its consequences to the parties.

Mr. Myers also argues the modification was not supported by the facts before the court. We disagree. Although there was a dispute over Mr. Myers' earning ability at the time of the dissolution, his actual income later increased. *See In re Marriage of Ochsner,* 47 Wn. App. 520, 525, 736 P.2d 292, *review denied,* 108 Wn.2d 1027 (1987). His financial condition was also considerably improved by the bankruptcy. On the other hand, the evidence of creditor

collection efforts and lawsuits against Mrs. Myers, not all of which were included in her financial affidavit, amply supports her need. We find no abuse of discretion.

We do not find, as Mrs. Myers urges, that this appeal is frivolous. *See In re Marriage of Healy*, 35 Wn. App. 402, 667 P.2d 114, *review denied*, 100 Wn.2d 1023 (1983). However, since she prevailed here, her request pursuant to RCW 26.09.140 for $2,587.70 in attorney fees, the amount of which has not been challenged and is less than half the fees requested by Mr. Myers, is granted.

Affirmed.

MUNSON, A.C.J., and GREEN, J., concur.