VINCENT SIRAGUSA, Appellant, *v.* JOANNE M. SIRAGUSA, Respondent.

No. 22043

December 3, 1992                                    843 P.2d 807

*Graziadei & Cantor,* Las Vegas, for Appellant.

*Shinehouse & Duesing,* Las Vegas; *Joshua Landish,* Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

Upon their divorce in 1983, appellant Vincent Siragusa (Vincent) and Respondent Joanne Siragusa (Joanne) entered into a property settlement agreement which provided that Vincent would make alimony payments to Joanne and Vincent would purchase Joanne's community property interest in Vincent's medical practice. After Vincent's property settlement obligations were discharged in bankruptcy, Joanne obtained a judgment for

alimony arrearages, to be paid in monthly installments until the judgment was satisfied. On August 1, 1990, Vincent made his final alimony payment, which included the prepayment of a small sum that would have been due in September, 1990. On August 31, 1990, Joanne filed a motion to modify the alimony award, which the district court granted. We conclude that the district court maintained jurisdiction to modify the alimony award and that it properly considered Vincent's discharged property settlement obligation as a "changed circumstance" justifying modification of the alimony award, and therefore we affirm the district court's order.

*Facts*

Vincent and Joanne were married on June 21, 1968. During the marriage and thereafter, Vincent was a prominent Las Vegas cardiologist and a partner in a number of professional business entities related to his medical practice. Joanne worked intermittently during the marriage as a school teacher. On September 22, 1983, Joanne filed for divorce.

On September 23, 1983, a decree of divorce was entered in the district court which incorporated the parties' property settlement agreement. That agreement provided in pertinent part that Vincent would make alimony payments of $3,000.00 per month for sixty consecutive months, commencing fifteen days from the date of the agreement (August 19, 1983), until either all of the sixty payments were made, Joanne remarried, or either party died. The agreement also provided that Vincent would purchase Joanne's community property interest in Vincent's medical practice for the sum of $1,250,000.00, to be paid over a period of fifteen years in increasing monthly installments.

By mid-1987, Vincent had fallen into default on both the alimony and property settlement obligations. On November 5, 1987, the district court had orally announced it would enter judgment in favor of Joanne in the amount of $1,300,000.00 in property settlement arrearages. On November 10, 1987, Vincent, who was solvent, filed a voluntary Chapter 7 petition for bankruptcy, under which his property settlement obligation was discharged but his alimony obligation was not. On November 23, 1988, Joanne obtained a judgment for $126,000.00 in alimony arrearages, and the district court ordered Vincent to make alimony payments to Joanne of $3,000.00 on November 1, 1988, and $7,500.00 "on the first day of December 1988 and continuing on the like day of each and every month thereafter until all sums due under the Judgment shall have been paid in full." In addition, the order awarded to Joanne interest on the judgment at the rate of twelve percent per annum from November 10, 1987.

On August 1, 1990, Vincent made his last alimony arrearage payment. This payment of $8,187.80 consisted not only of the $7,500.00 monthly balance due, but also the $687.80 residue of the $126,000.00 judgment, which would have been due on September 1, 1990, had Vincent not prepaid it. On August 31, 1990, Joanne filed a motion to modify the alimony provisions of the parties' divorce decree. This motion was based upon the fact that Vincent's income had increased substantially since the original divorce decree and that the discharge of the property settlement obligation in bankruptcy profoundly affected the parties' relative financial positions, to Joanne's detriment. The domestic relations referee heard Joanne's motion for modification and recommended that Vincent continue alimony payments of $7,500.00 per month until Joanne remarried or either party died. The referee specifically found that the court had jurisdiction to modify the alimony award, which was determined to be nondischargeable in bankruptcy, and that the parties' circumstances had significantly changed, to the benefit of Vincent, at least in part because of Vincent's bankruptcy and discharged property settlement obligation. Because Vincent failed to object to the referee's recommendation, the district court adopted the recommendation and issued the appropriate order. Vincent now appeals that order.

## Discussion

### 1. Appealability of the Order.

Joanne challenges this court's jurisdiction over Vincent's appeal. Joanne contends that, because Vincent failed to file a timely objection to the referee's recommendation in the district court, NRS 125.005(4)[1] prohibits Vincent from challenging the order on appeal.

NRS 125.005, enacted in 1985, empowered the district court to appoint referees in domestic relations cases. NRS 125.005(1). The statute was intended to alleviate some of the burden on the district courts by allowing domestic relations referees to share the workload. Hearings on S.B. 87 Before the Nevada Assembly

---

[1]NRS 125.005 provides for the appointment of a referee in domestic relations cases. NRS 125.005(1). NRS 125.005(4) states:

The report of the referee must be furnished to each party or his attorney at the conclusion of the proceeding or as soon thereafter as possible. Within 10 days after receipt of the report, either party may file and serve upon the other party written objections to the report. If no objection is filed, the court shall accept the findings of fact unless clearly erroneous, and judgment may be entered thereon. If an objection is filed within the 10-day period, the court shall review the matter and enter such order, judgment or decree as is just, equitable and appropriate.

Judiciary Committee, 63rd Session (March 28, 1985). Senate Bill 87, now codified as NRS 125.005, provided that, if a referee's findings were not challenged in a timely manner, they would be adopted by the district court, and they would not be open to challenge at a later date. *Id.* This procedure was designed to reduce the burden on the district court. *Id.*

Where a party fails to file a timely challenge to the referee's findings in the district court, NRS 125.005(4) precludes any later challenge before the district court; it does not preclude a challenge before this court of the referee's findings adopted by the district court. In enacting NRS 125.005, the legislature did not mean to foreclose a party from all avenues of appeal from a referee's decision. On the contrary, the Assembly Judiciary Committee hearings reveal that some legislators were concerned that the statute would give referees too much judicial authority. *Id.* In these legislative hearings, it was stated that NRS 125.005 does not "delegate judicial power; it delegates certain fact finding and recommending power and, in any event, it takes a judge to do anything." *Id.* In light of the Legislature's expressed concern with limiting the powers of the domestic relations referee, we decline to interpret NRS 125.005(4) in a manner that would often make the referee the final arbiter and the highest legal authority over many legal disputes. Although Vincent failed to make a timely objection to the referee's report recommending alimony modification, and therefore Vincent was foreclosed from challenging the referee's report in the district court, NRS 125.005(4) does not bar Vincent's appeal to this court of the district court's order adopting the findings and recommendations of the domestic relations referee.

### 2. *Jurisdiction to Modify Alimony.*

Vincent contends the district court had no jurisdiction to modify the alimony award because he had made his final alimony payment before Joanne filed her motion, so there were no unaccrued alimony payments remaining to modify.

NRS 125.150(7) states:

> If a decree of divorce, or an agreement between the parties which was ratified, adopted or approved in a decree of divorce, provides for specified periodic payments of alimony, the decree or agreement is not subject to modification by the court as to accrued payments. Payments pursuant to a decree entered on or after July 1, 1975, which have not accrued at the time a motion for modification is filed may be

modified upon a showing of changed circumstances, whether or not the court has expressly retained jurisdiction for the modification.

*See* Hildahl v. Hildahl, 95 Nev. 657, 660, 601 P.2d 58, 60 (1979) (alimony payments once accrued are non-modifiable). The district court's jurisdiction, therefore, is co-existent with the alimony order itself, and the alimony award may not be modified after the order has expired of its own terms, since a court cannot modify that which no longer exists. *See* Brown v. Brown, 507 P.2d 157, 158-59 (Wash.Ct.App. 1973); Russell G. Donaldson, J.D., Annotation, *Power to Modify Spousal Support Award for a Limited Term, Issued in Conjunction with Divorce, So As to Extend the Term or Make the Award Permanent,* 62 A.L.R. 4th 180, 186-87, 216-19 (1988).

In Schryver v. Schryver, 108 Nev. 190, 826 P.2d 569 (1992), we shed light on the meaning of "accrued payments" in NRS 125.150(7). In *Schryver,* husband and wife were divorced and husband was ordered to pay wife $1,200.00 per month in alimony beginning on October 1, 1982, and continuing for a period of eight years. *Id.* at 190, 826 P.2d at 569-70. September of 1990 was the last month husband was required to make alimony payments under the divorce decree, and husband paid the last payments of $1,200.00 in full at the beginning of the month. *Id.* at 190, 826 P.2d at 570. In the middle of the month, wife, seeking an increase and extension of the alimony payments, filed a motion to modify the alimony portion of the divorce decree. *Id.* at 190-91, 826 P.2d at 570. The district court dismissed the motion for modification, and although it did not state its grounds for the dismissal, both the litigants and this court assumed the dismissal was for lack of jurisdiction. *Id.* at 191, 826 P.2d at 570.

Wife contended on appeal that, although husband had made his final alimony payment prior to her motion for modification, the term of support, and thus the court's jurisdiction, did not terminate until the last day of the month. *Id.* In a case of first impression in Nevada, we accepted wife's contentions and found the district court had jurisdiction to consider wife's motion for modification. *Id.* We found that "[t]o hold otherwise would allow a payor spouse to deprive the court of jurisdiction simply by making advance payments." *Id.* Thus, in *Schryver,* we held the time when alimony payments "accrue" is determined not only by whether the payments have been made, but also by the period of the alimony award. Where the period of the alimony award has not elapsed, the district court has jurisdiction to modify the alimony portion of a divorce decree, regardless of whether the supporting spouse has made all required alimony payments. In other words, a district court retains jurisdiction to modify an

award of alimony until the expiration of the period for which the original alimony award was decreed to run.

We conclude that *Schryver* is dispositive of the instant case. The district court ordered Vincent to pay Joanne alimony arrearages of $3,000.00 on November 1, 1988, and $7,500.00 "on the first day of December 1988 and continuing on the like day of each and every month thereafter until all sums due under the Judgment shall have been paid in full." The district court also ordered Vincent to pay interest on the $126,000.00 judgment at the rate of twelve percent per annum from November 10, 1987. In effect, the district court ordered specified periodic payments of alimony, each and every month, for a period which, though not explicitly stated, could easily be calculated. When calculated, the period of the district court's award of alimony is found to be more than twenty months, and therefore, the period of the award extended through September, 1990. Since Joanne brought her motion to modify the alimony award on August 31, 1990, well before the period for the payment of monthly alimony installments expired, we hold that the district court maintained jurisdiction to modify the alimony award.

Vincent alternatively argues that the order which Joanne seeks to modify is a non-modifiable judgment for alimony arrearages, rather than an alimony award, and that the district court lacks jurisdiction to consider Joanne's motion for modification because the original periodic alimony award expired in September, 1988. We find Vincent's argument to be unpersuasive. At the time the original alimony award expired, Vincent was heavily in arrears in his alimony obligations, and because of this, Joanne sought and obtained a judgment for $126,000.00 in alimony arrearages. As a supporting spouse may not deprive the court of jurisdiction by making advance alimony payments, Schryver v. Schryver, 108 Nev. 190, 191, 826 P.2d 569, 570 (1992), neither may a supporting spouse deprive the court of jurisdiction by failing to make alimony payments. Where the supporting spouse is in arrears at the expiration of the original alimony term, modification of the alimony award is proper after the expiration of the original alimony term. Brown v. Brown, 338 S.2d 916, 918-19 (Fla. Dist.Ct.App. 1976). The *Brown* court stated:

> A spouse who is behind in the payment of alimony can hardly be heard to complain that his wilful failure to carry out his original alimony obligations has had the effect of extending the period of time within which the court is entitled to consider a request for further alimony . . . .

*Id.* at 919.

We hold that a supporting spouse, such as Vincent, cannot take advantage of his own failure to comply with his alimony obligations to shield him from subsequent modification of the alimony award, and that the district court maintained jurisdiction over the alimony award when the original alimony period expired while Vincent was heavily in arrears. A judgment for alimony arrearages extends the supporting spouse's alimony obligations for the period of the judgment, and these alimony obligations are modifiable until the expiration of the term specified in the judgment.

### 3. *The Discharged Property Settlement Obligation.*

Vincent contends the district court, in modifying the alimony award, substituted an alimony obligation in place of a debt validly discharged in bankruptcy, in contravention of supreme federal law. The determination of whether an obligation is dischargeable in bankruptcy is a matter of federal law. Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir. 1984); Martin v. Martin, 108 Nev. 384, 386, 832 P.2d 390, 391 (1992). While obligations for alimony, maintenance, and support are not dischargeable in bankruptcy, 11 U.S.C. § 523(a)(5) (1979 & supp. 1992), property division obligations are dischargeable. Matter of Coil, 680 F.2d 1170, 1171 (7th Cir. 1982); In re Marriage of Clements, 184 Cal.Rptr. 756, 759 (Cal.Ct.App. 1982); *Martin,* 108 Nev. at 386, 832 P.2d at 391. State and federal courts have concurrent jurisdiction to determine whether an obligation is one for property settlement or one for alimony and support. In re Aldrich, 34 B.R. 776, 780 (Bankr. 9th Cir. 1983); In re Reak, 92 B.R. 804, 807 (Bankr.E.D.Wis. 1988); Hopkins v. Hopkins, 487 A.2d 500, 503 (R.I. 1985).

The bankruptcy court in the instant case discharged Vincent's $1,300,000.00 property settlement obligation, but not his alimony obligation. The district court adopted the referee's findings that, due in part to Vincent's bankruptcy and the discharge of his property settlement obligations, both Joanne's and Vincent's financial circumstances had sufficiently changed, to the advantage of Vincent, such that modification of the alimony award in the divorce decree was appropriate. The issue thus becomes whether it is proper for a district court to consider a discharge of property equalization debts in bankruptcy as a "changed circumstances"[2] which would merit the modification of an alimony award.

While we have never addressed the issue, both state and federal

---

[2]NRS 125.150(7) authorizes the modification of alimony "upon a showing of changed circumstances."

courts in other jurisdictions have uniformly determined that the discharge of a property settlement obligation in bankruptcy may be taken into account in determining whether the parties' circumstances have changed sufficiently to justify a modification of alimony. *See* In re Danley, 14 B.R. 493, 495 (Bankr.D.N.M. 1981); *In re Reak,* 92 B.R. at 806: *In re Marriage of Clements,* 184 Cal.Rptr. at 760-61; Foster v. Childers, 416 N.W.2d 781, 786 (Minn.Ct.App. 1987); Coakley v. Coakley, 400 N.W.2d 436, 441 (Minn.Ct.App. 1987); *Hopkins,* 487 A.2d at 504-05; In re Marriage of Myers, 773 P.2d 118, 120-22 (Wash.Ct.App. 1989); Eckert v. Eckert, 424 N.W.2d 759, 760, 763 (Wis. Ct.App.), *review denied,* 430 N.W.2d 351 (Wis. 1988). The uniformity of decisions does not mean that the question is not a close one, and two strong competing interests must be weighed. The court in In re Marriage of Clements, 184 Cal.Rptr. 756 (Cal. Ct.App. 1982), stated:

> Through discharge, the bankruptcy court attempts to provide "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt. On the other hand, the family law court has a strong interest in requiring the bankrupt to fulfill obligations that are an indivisible part of the equal division of community property.

*Id.* at 759 (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)). *See* Wetmore v. Markoe, 196 U.S. 68, 77 (1904) ("[s]ystems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive and to permit him to have a fresh start in business or commercial life"). Thus, the mandates of the Supremacy Clause[3] of the United States Constitution compete with the equitable interest in preventing one spouse from unilaterally acting to deprive the other spouse of marital assets.

The Supremacy Clause prevents states from enacting laws which do "major damage" to "clear and substantial" federal interests or "sufficiently injure the objectives of the federal program." Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 583 (1979), *superseded in part,* 45 U.S.C. § 231m (1986). *See* Rose v. Rose, 481 U.S. 619, 625 (1987). "Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws which are contrary to, or which interfere with, the laws of Congress are invalid."

---

[3]Article VI of the United States Constitution states: "This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Davidson v. Velsicol Chemical, 108 Nev. 591, 593, 834 P.2d 931, 932 (1992), *reh'g denied*. However, "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Popovici v. Agler, 280 U.S. 379, 383 (1930) (quoting Ex parte Burrus, 136 U.S. 586, 593, 594 (1890)).

State courts deciding the issue have resolved the tension between federal and state objectives in favor of the state interest in resolving domestic relations disputes. In In re Marriage of Myers, 773 P.2d 118 (Wash.Ct.App. 1989), the Washington Court of Appeals determined that, although it could not recharge husband with debts he discharged in bankruptcy, federal law did not preempt state procedures for modifying alimony to compensate the wife for the discharged obligations. *Id.* at 120. The court found that issues of support and maintenance are generally left to the states and "[c]onsidering post-bankruptcy changes in financial relationships does not necessarily result in or frustrate the Bankruptcy Code's fresh start policy." *Id.* at 121. *See Eckert,* 424 N.W.2d at 762 ("[t]he exercise of judicial power modifying spousal support post-bankruptcy is not antagonistic to the federal 'fresh start' policy of bankruptcy relief"). In *In re Marriage of Clements,* the California Court of Appeal recognized the tension between state family law and federal bankruptcy law, but found "[a]s a matter of policy, domestic relations is considered a field particularly suited to state control, and federal courts have traditionally been inclined to respect the power of state courts to make, modify, and terminate provisions for spousal support." *In re Marriage of Clements,* 184 Cal.Rptr. at 760.

We find these authorities to be persuasive and therefore conclude that a district court may consider a spouse's discharged property settlement obligation as a "changed circumstance" in ruling upon a motion for modification of alimony. Modification of an alimony award based upon a discharged property settlement obligation does not re-create a debt discharged under federal bankruptcy laws, and therefore the district court in the instant case properly considered Vincent's discharged property settlement obligation in ruling upon the motion for modification of alimony.

We have considered Vincent's other contentions of error, and we conclude they are without merit. Accordingly, we affirm the judgment of the district court.