[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR CONTEMPT DATED AUGUST 13, 1992
The sole issue presented by the plaintiff's motion in the form of a citation is whether certain payments due the plaintiff from the defendant pursuant to a decree of dissolution are dischargeable in bankruptcy. The defendant filed a petition in bankruptcy, Case No. 92-25093, in the District of Connecticut, and during an adversary proceeding commenced by the defendant to determine the dischargeability of his obligations under the dissolution decree (Adversary Proceeding No. 92-2098), the bankruptcy court referred the issue to this court for determination.
 I.
The court heard testimony and received documentary evidence and post-trial briefs and finds the following facts. The parties married at North Stonington, Connecticut, on October 29, 1988. Prior to the parties' marriage, the wife resided in Maine and then moved to Connecticut with her four children from a prior marriage to reside with the defendant. The parties also entered into a 15-page prenuptial agreement, Plaintiff's Exhibit 1. The action for dissolution was commenced on March 20, 1990, and was the basis of an uncontested dissolution on August 30, 1990, at which both parties were represented by counsel. The financial affidavits submitted by the parties on the date of dissolution showed the plaintiff wife to own no assets[1] with liabilities of $13,479.82, net weekly income as a secretary/receptionist of $308.29, with weekly expenses and liabilities exceeding her net income; while the defendant husband's financial affidavit showed net weekly income of $708.38, net weekly expenses of $883.24, and weekly payments toward his liabilities of $648.77. He also showed ownership of $352,679.92 in assets against $83,824.89 of liabilities. CT Page 756
The paragraphs of the decree of dissolution relevant to the sums due the wife are:
"The defendant shall pay to the plaintiff the sum of Fifty Thousand ($50,000) Dollars within thirty days.
The defendant shall pay a certain outstanding loan to the Coastal Savings Bank in the approximate amount of Twenty Four Hundred ($2,400) Dollars and hold the plaintiff harmless from said loan obligation. Payment of said loan is in lieu of a return of any lost clothing, jewelry or jacket belonging to the plaintiff.
The plaintiff shall have exclusive use and possession of the marital residence in North Stonington, Connecticut, for a period of forty-five (45) days following the payment of the Fifty Thousand ($50,000) Dollars as herein ordered.
The defendant shall pay to the plaintiff's attorney the sum of Five Thousand ($5,000) Dollars within thirty (30) days towards her counsel fees.
The plaintiff shall return to the defendant the Ford Grenada within twenty-four (24) hours following her receipt of Fifty Thousand ($50,000) Dollars as herein ordered. At the time of vacating the premises, the plaintiff shall take all of her personal property and her children's personal property as well as any pots and pans or other property belonging to her. All of the furniture and furnishings shall remain (sic) the residence.
Both parties are employed and self-supporting and no alimony is awarded to either party."
The defendant failed to make all of the payments due, and after a number of contempt citations and capiases, the court (Roletsky, J.) found an arrearage due the plaintiff of $38,316 from the defendant and continued the matter for payment. The court did not allocate the arrearage among the three separate obligations, and the case was continued for partial payment. When no further payment was made, the plaintiff filed another contempt citation on January 10, 1992, and the defendant filed a bankruptcy petition, and this proceeding ensued. The plaintiff remained in the marital CT Page 757 home until it was foreclosed some time in the fall of 1992.
 II.
The plaintiff argues that the debt is not dischargeable in bankruptcy as it is in the nature of alimony, maintenance or support. The defendant argues that the payment was a property settlement and dischargeable, and therefore, he cannot be adjudged in contempt.
The basic issue is then whether the obligations to the plaintiff are nondischargeable debts under federal bankruptcy law as being in the nature of alimony, maintenance or support.
Section 523(a)(5) of the Bankruptcy Code provides as follows:
"A discharge . . . does not discharge an individual debtor from any debt —
(5) to a . . . former spouse, . . . for alimony to, maintenance for, or support of such spouse . . ., in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that —
(B) Such debt includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance or support. . ."11 U.S.C. § 523 (a)(5) (emphasis provided).
At this point, it must be pointed out that "[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not state law; (citation omitted) it is . . . [also] true that Congress could not have intended that . . . courts were to formulate the bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of the well-established laws of the states." Forsdick v. Turgeon, 812 F.2d 801, 802
(2d Cir. 1987).
The following factors are among those considered by courts in determining whether an obligation is in the nature of alimony, maintenance or support: whether the obligation terminates on the death or remarriage of the debtor's spouse; CT Page 758 whether the payments are made to the ex-spouse or to a third party; whether assumption of an obligation is necessary to satisfy the daily needs of the ex-spouse, or to provide a home; the length of the marriage and the number of children; and the intent of the parties. see In re Ammirato, 74 B.R. 605,607-608, (Bkcy. D.Conn. 1987) quoted in Lesser v. Lesser, 16 Conn. App. 513, 517 (1988), cert. den. 210 Conn. 802
(1989).
As above noted, the decree itself does not characterize as support, alimony, maintenance or property assignment any of the three obligations, i.e. the $50,000 payment, the attorney's fees of $5,000 or the assumption of the $2,400 Coastal Bank indebtedness, although, it does provide that . . . "no alimony is to be awarded either party." The decree is therefore ambiguous and the court must search for the intent of the parties in the creation of the obligations.
"Although the structure of the dissolution order may indicate whether the division of marital property is considered lump sum alimony pursuant to General Statutes46b-82 or a property assignment pursuant to 46b-81, the difference between the two can be seen in their purposes. Blake v. Blake, 211 Conn. 485, 497 (1989). `The purpose of a property assignment is to divide the ownership of the parties' property equitably; McPhee v. McPhee, 186 Conn. 167,170 (1982); while periodic and lump sum alimony is based primarily on a continuing duty to support." Hotkowski v. Hotkowski, 165 Conn. 167, 170 (1973); Passamano v. Passamano,28 Conn. App. 854, 857 (1992), cert. granted 224 Conn. 904
(1992). Put another way, the purpose of a property assignment or division "is to unscramble the ownership of property giving to each spouse what is equitably his." See Krause v. Krause, 189 Conn. 570-571 (1983).
"A judgment rendered in accordance with the stipulation of the parties is to be construed and regarded as a binding contract." Caracansi v. Caracansi, 4 Conn. App. 645,650, cert. den. 197 Conn. 805 (1985). Construction of such an agreement is an issue of fact, and it is to the agreement as expressed in the judgment that the court now looks to determine the intent of the parties.
"Interpretation of an agreement is a search for the CT Page 759 intent of the parties." Lavigne v. Lavigne, 3 Conn. App. 423,427-428 (1985). "Where the text of an agreement reasonably allows for varying interpretations — whether by the inadvertence or design of the draftsman — the need for judicial construction cannot, and may not, be avoided." (citation omitted). Because the judgment and the parties' agreement are ambiguous . . . the intention of the parties . . . is to be determined by a fair and reasonable construction of the language used interpreted in the light of the situation of the parties, the circumstances connected with the transaction, the motives of the parties and the purposes which they sought to accomplish." Nelson v. Nelson, 13 Conn. App. 355,360 (1988).
 III.
A review of the factors distinguishing obligations in the nature of alimony, maintenance or support from a property settlement leads the court to conclude that the parties intended that the defendant's obligations were in the nature of alimony, support or maintenance. According to the prenuptial agreement, the wife had a right to seek periodic alimony for a number of years equivalent to the length of the marriage at the rate of $10,000 for each year of the marriage. She also had the right to a building lot. The plaintiff had four children from a prior marriage. At the time of the dissolution, she owned no home, nor a car, and possessed and used both the marital home and car owned and provided by the defendant. The payment of the $50,000 was clearly designed to provide a home for the plaintiff and her children. As appears from her financial affidavit, although she had regular earnings, she had no liquid assets of any kind, not enough to pay moving expenses, or to provide a down payment on a home or a security deposit to a landlord. Until the $50,000 was to be paid, the defendant was to continue to provide the plaintiff and her children with the use of the marital home and the car. The intent of the parties as to the payment of the $50,000 was to insure that the plaintiff would be enabled to obtain substitute housing and transportation for herself and her children which are necessities of life, and in the nature of alimony, support or maintenance. This conclusion is strengthened by the fact that the plaintiff owned no property to "equitably divide" or to "unscramble," except the chose in action set forth in the prenuptial agreement. And although the decree states in CT Page 760 part . . . "and no alimony is awarded to either party," this is belied by the transcript of the proceedings before Judge Vasington where plaintiff's attorney asked the plaintiff, "Mrs. Lewis, do you understand that if you don't ask for any periodic alimony, except the $50,000, that you will not at any time in the future be permitted to return to court and seek alimony from him?" (emphasis provided.) Answer: "Yes." Attorney Foley: "Do you understand that?" Answer: "Yes."
Accordingly, this court concludes the $50,000 payment is nondischargeable in bankruptcy. The court's conclusion is the same as to the $5,000 award of attorney's fees. An award of attorney's fees may be essential to a spouse's ability to carry on or to defend a matrimonial action or proceeding and therefore is in the nature of alimony or support. See Oakley v. Oakley, 39 Conn. Sup. 13,18 (1983) discussing New York law in the context of a claim of dischargeability. In this case, the plaintiff owned no liquid assets, and the award of $5,000 was essential to maintain her action. The fact that the $5,000 was payable to her attorney and not to her does not alter the character of the obligation, as she remains liable to her attorney, and "thus, in her hands the obligation remains nondischargeable." Oakley v. Oakley, supra, 19, quoting In re Lang, 11 B.R. 428,431-432 (1981).
Applying the principles previously stated, the court concludes that the portion of the $38,316 due the plaintiff which arises out of the $2,400 due the bank, if any, is dischargeable, as the assumption of that liability was "in lieu of a return of lost clothing, a jacket and jewelry belonging to the plaintiff." There is no evidence that the purpose of the bank loan was to purchase these items originally or that the assumption of the bank loan was to enable the plaintiff to provide substitute or replacement items, and the furnishing of jewelry is clearly not an item in the "nature of alimony, maintenance or support."
Therefore, the $38,316 due the plaintiff is not dischargeable in bankruptcy, with the exception of that portion, if any, allowable to the $2,400 Coastal Bank loan.
Accordingly, this case shall be set down on January 27, 1993, on the short calendar for hearing to CT Page 761 determine to following:.
(1) The amount of non-dischargeable arrearage due the plaintiff.
(2) The amount, if any, of post-judgment attorney's fees to be awarded the plaintiff.
(3) The defendant's ability to pay the arrearage determined; the defendant is ordered to provide a current financial affidavit at least one week prior to said hearing.[2]
Teller, J.