2005 ND 132

**Frances M. REINEKE n/k/a Frances M. Michels, Plaintiff and Appellant**

v.

**Ronald K. REINEKE, Defendant and Appellee.**

No. 20050006.

Supreme Court of North Dakota.

July 13, 2005.

Brenda A. Neubauer, Neubauer & Oster, Bismarck, N.D., for plaintiff and appellant.

Ronald K. Reineke, pro se, Mandan, N.D., defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Frances Michels appealed a second amended judgment that increased her

spousal-support award. Michels argues the increase is insufficient to fulfill her enhanced burden to satisfy debt discharged in bankruptcy by her ex-husband, Ronald Reineke. We reverse the second amended judgment and remand for further proceedings to reconsider the amount and duration of the spousal-support payments.

[¶ 2] Michels and Reineke were divorced pursuant to a district court judgment that awarded Michels possession of the parties' marital home and ordered her to satisfy the first home mortgage. The parties were to split the second home mortgage, which, at the time of the original divorce judgment, was erroneously valued at approximately $35,000. The true amount of the second mortgage is approximately $70,000. This loan is paid at a rate of $433.22 per month, and each party was responsible for half of this payment, or $216.61. Following the divorce, Reineke filed for Chapter 7 Bankruptcy and listed the second mortgage as an obligation. Reineke succeeded in discharging this obligation pursuant to his bankruptcy petition. In response, Michels filed a N.D.R.Civ.P. 60(b) motion with the district court to increase her spousal-support award to remedy her now-heightened obligation to satisfy the entire second mortgage.

[¶ 3] The district court increased Michels' spousal-support award from $300 per month to $650 per month for a duration of 4 years, beginning on October 15, 2004. The parties original divorce judgment stated that the $300–per–month award would begin on November 15, 2002, and continue through November 15, 2006. Although Michels' motion was brought under N.D.R.Civ.P. 60(b), the district court has continuing jurisdiction to modify the parties' spousal-support arrangement. N.D.C.C. § 14–05–24.1; *see Reineke v. Reineke*, 2003 ND 167, ¶ 23, 670 N.W.2d 841.

·I.

[¶ 4] Michels concedes the monthly increase in spousal support is sufficient to cover her ex-husband's obligation under the second mortgage, but she contends the duration of these payments is too short. Michels believes the district court should have revisited the applicable *Ruff–Fischer* guidelines in making its spousal-support determination, considered an award of permanent spousal support, and contemplated awarding her proceeds from her ex-husband's retirement account. Michels asserts the trial court failed to enforce an indemnification clause in the parties' divorce judgment that held each party harmless as to the other party's obligation under the second mortgage.

[¶ 5] In contrast, Reineke asserts the trial court erred in raising his spousal-support obligation. By letting Michels collect on the second mortgage, Reineke rationalizes the district court treated her as a creditor. Reineke contends Michels, as a creditor, should not be allowed to collect on a debt discharged in bankruptcy. In the alternative, Reineke argues the district court addressed and effectively satisfied the indemnification clause in the parties' divorce judgment by raising his spousal-support obligation.

[¶ 6] The U.S. bankruptcy laws contain exceptions that prohibit discharging debt in certain circumstances. One such exception is 11 U.S.C. § 523(a)(5), which provides that a discharge under Chapter 7 does not discharge an individual debtor from any debt "to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement, divorce decree or ... property settlement agreement." The relevant question is whether the debt sought to be discharged is in the nature of alimony, maintenance,

or support, which would make the debt nondischargeable, or whether the debt stems from a property division or property settlement, which renders the debt discchargeable. *In re Marriage of Clements,* 134 Cal.App.3d 737, 184 Cal.Rptr. 756, 759 (1982). Here, we can infer the bankruptcy court viewed Reineke's obligation to satisfy half of the second mortgage as being in the nature of a property division, which would explain the court's decision to discharge the debt. The parties' divorce judgment specifically labeled this mortgage obligation a "property and debt division" and made separate arrangements for spousal support. Furthermore, Reineke's payments under the second mortgage were not made directly to Michels. *See* 11 U.S.C. § 523(a)(5)(A) (discussing the assignment of debt to another entity).

[¶ 7] It is less clear whether the bankruptcy court considered the indemnification agreement between the parties. Reineke's Bankruptcy Schedules noted that Michels was a co-debtor on the second mortgage, but the record on appeal does not reveal whether the bankruptcy court considered Michels' potential claims against Reineke. There are conflicting views about the status of indemnification agreements in these situations. Some courts have stated that enforcement of indemnification agreements depends on the nature of the underlying debt sought to be discharged. *Clements,* 184 Cal.Rptr. at 759 (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess., at 364 (1977), U.S.Code Cong. & Admin.News 1978, at 5787, which provides for this result). If the indemnification agreement relates to alimony, maintenance, or support, the agreement is nondischargeable. *Id.* In contrast, if the indemnification agreement relates to debt from a property division, both the underlying debt and the indemnification agreement are dischargeable. *Id.* Bankruptcy courts have similarly cited the explicit

provisions of H.R.Rep. No. 95–595, 95th Cong., 1st Sess., at 364 (1977), U.S.Code Cong. & Admin.News 1978, at 5787, and S.Rep. No. 95–989, at 79 (1978), 95th Cong., 2nd Sess. 1978, 1978 U.S.Code. Cong. & Admin.News. 5787 at 5864–65, for the proposition that a debtor's agreement to indemnify a former spouse against third-party debt survives discharge if, and only if, the underlying liability is actually in the nature of maintenance or support. *In re Lewis,* 39 B.R. 842, 844–45 & n. 4 (Bankr.W.D.N.Y.1984); *see also In re Daiker,* 5 B.R. 348 (Bankr. D.Minn.1980) (after rejecting the argument that the debtor's assumption of certain joint debts constituted maintenance or support, the bankruptcy court similarly rejected the argument that the debtor's obligation to indemnify his ex-spouse was, in and of itself, an agreement for maintenance and support).

[¶ 8] Other courts have suggested that an ex-spouse's right to indemnification or subrogation might survive a discharge of the underlying property-settlement debt in bankruptcy. *See In re Lang,* 11 B.R. 428 (Bankr.W.D.N.Y.1981) (holding that, although ex-husbands could discharge debt payable directly to ex-wives' attorneys, the discharge does not eliminate the debtors' obligations for the fees to their former wives, who, through indemnification or subrogation, obtain a nondischargeable right to payment); *see also Oakley v. Oakley,* 39 Conn.Supp. 13, 466 A.2d 1197, 1199–1200 (1983) (after finding that debt arising from a property settlement was dischargeable, the court, citing *Lang,* refused to "express or intimate its opinion on the contractual obligation of the defendant to the plaintiff under the separation agreement").

[¶ 9] "State and federal courts have concurrent jurisdiction to determine whether an obligation is one for property

settlement or one for alimony and support." *Siragusa v. Siragusa,* 108 Nev. 987, 843 P.2d 807, 812 (1992); *see also Hopkins v. Hopkins,* 487 A.2d 500, 503 (R.I.1985) (same). Although there is persuasive case law favoring the discharge of an indemnification agreement where the underlying debt originated from a property settlement, we are hesitant to adjudicate the status of the parties' indemnification agreement because it is unclear whether the bankruptcy court dealt with this matter. Furthermore, there are independent state-law principles upon which to resolve this case.

[¶ 10] Regardless of the status of the parties' indemnification agreement, numerous courts, including our own, have relied on state spousal-support provisions to modify support in response to a debtor's declaration of bankruptcy. These cases have addressed a multitude of situations, including modifications of spousal support where property-settlement debt is discharged and an indemnification agreement is either similarly discharged or is not present. *See, e.g., In re Marriage of Clements,* 134 Cal.App.3d 737, 184 Cal. Rptr. 756, 759–61 (1982); *Foster v. Childers,* 416 N.W.2d 781, 785–86 (Minn.Ct.App. 1987); *Coakley v. Coakley,* 400 N.W.2d 436, 440–41 (Minn.Ct.App.1987); *Siegel v. Siegel,* 243 N.J.Super. 211, 578 A.2d 1269, 1270–71 (Ch.Div.1990); *Siragusa,* 843 P.2d at 811–13; *Kopp v. Kopp,* 2001 ND 41, ¶¶ 2–3, 11–12, 622 N.W.2d 726; *Hopkins,* 487 A.2d at 504–05; *In re Marriage of Myers,* 54 Wash.App. 233, 773 P.2d 118, 120–22 (1989); *Eckert v. Eckert,* 144 Wis.2d 770, 424 N.W.2d 759, 760–61 (Ct. App.1988). In *Kopp,* we addressed a situation where an ex-wife sought relief from a divorce judgment under N.D.R.Civ.P. 60(b). *Kopp,* at ¶ 3. We affirmed the trial court's award of spousal support, two retirement accounts, and the cash value of two life insurance policies to rectify what

the trial judge called a "terrific disparity" in the parties' financial situations resulting from the ex-husband's bankruptcy discharge. *Id.* at ¶¶ 3, 12.

[¶ 11] Further, many of the courts cited above rejected arguments similar to those advanced by Reineke, namely that a discharge in bankruptcy precludes a state court from using the law of domestic relations to "override" the federal court's determination or "re-create" the discharged debt. *Clements,* 184 Cal.Rptr. at 759–61; *Siegel,* 578 A.2d at 1270–71; *Siragusa,* 843 P.2d at 811–13; *Myers,* 773 P.2d at 120–22; *Eckert,* 424 N.W.2d at 761–63. These courts emphasized domestic relations is a field particularly suited to state control and noted that federal courts have traditionally been respectful of a state's decision to modify spousal-support awards. Another court has noted that "imposition of additional support obligations by a state court judge who has carefully retained jurisdiction to do so should be properly understood as just one more exception of those kinds of debts Congress considered more important than the [debtor's] fresh start." *In re Danley,* 14 B.R. 493, 495 (Bankr.D.N.M.1981).

[¶ 12] A trial court "may require one party to pay spousal support to the other party for any period of time." N.D.C.C. § 14–05–24.1. A trial court's determination of spousal support is reviewed as a finding of fact and will only be overturned if it is clearly erroneous. *Corbett v. Corbett,* 2002 ND 103, ¶ 4, 646 N.W.2d 677. To modify an award of spousal support, there must be a showing of a material change in circumstances, which "is something substantially affecting the financial abilities or needs of a party." *Sommer v. Sommer,* 2001 ND 191, ¶ 18, 636 N.W.2d 423.

■ [¶ 13] Here, the trial court increased Michels' spousal-support award by $350 per month for approximately 2 years and extended the period of time in which the $650–per–month award was paid for an additional 2 years. The trial court awarded Michels roughly $24,000 in additional spousal support when Reineke's share of the second mortgage is $35,000. And, while Michels' receipt of $24,000 over the next 4 years will significantly exceed her ex-husband's former obligation under the second mortgage for this same period of time, i.e., $216.61 per month for 4 years, or roughly $10,400, the trial court's rationale for awarding these "excess" funds is unexplained. Under the circumstances, the trial court may have intended to offset the "unjustifiable windfall to [Reineke] at [Michels'] expense" created by the bankruptcy "wholly nullifying the equitable nature of the original divorce judgment." *See Kopp*, 2001 ND 41, ¶ 11, 622 N.W.2d 726.

[¶ 14] However, if the trial court's objective was to restore Michels to her prior position, the second amended judgment does not do so. Other courts confronting similar situations have affirmed modifications of spousal-support awards that mirror the economic impact experienced by the parties. *See Clements*, 184 Cal.Rptr. at 757–58 (ex-husband obtained an order from the trial court allowing him to reduce his ex-wife's spousal-support award in direct proportion to the payments he was making on ex-wife's discharged debt); *Danley*, 14 B.R. at 494–95 (bankruptcy court did not disturb state court's decision to award additional support in the amount of the discharged debt).

[¶ 15] We remand to the trial court for further proceedings to reconsider the amount and duration of these payments. The trial court should explain its rationale for awarding higher payments for a shorter period of time, yet ultimately leaving Michels with a deficit. If the trial court had an objective other than restoring Michels to her prior position, this objective is unknown to us.

■ [¶ 16] Michels argues the trial court erred in not revisiting the *Ruff–Fischer* guidelines in making its support determination. We have previously stated that "[w]hen awarding spousal support, the trial court is to apply the *Ruff–Fischer* guidelines." *van Oosting v. van Oosting*, 521 N.W.2d 93, 100 (N.D.1994). Further, "[i]n deciding whether to award spousal support, the trial court must consider the *Ruff–Fischer* guidelines." *Lill v. Lill*, 520 N.W.2d 855, 856 (N.D.1994). Although these quotes imply the *Ruff–Fischer* guidelines possess their greatest weight in the context of initial decisions to award spousal support, the guidelines can and should be applied in other contexts, including certain decisions to modify spousal support. Nonetheless, we will not require a trial court confronted with this unique situation, a modification of spousal support stemming from a discharge of a debt with a readily ascertainable value, to consider the *Ruff–Fischer* guidelines anew or be found to be in error.

[¶ 17] In light of our holding, we do not further consider Michels' other arguments regarding permanent spousal support and a redistribution of the parties' property division through an award of Reineke's retirement account.

[¶ 18] We reverse the second amended judgment and remand for further proceedings to reconsider the amount and duration of the spousal-support payments.

[¶ 19] CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

DALE V. SANDSTROM.

I concur in the result.