IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 32159-2-III |
| JAMES E. PARSONS, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| BOBETTE C. PARSONS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — In this marriage dissolution action, the trial court distributed the

parties' community property equally; awarded the wife, Bobette Parsons, $3,500.00

maintenance per month until Bobette dies, remarries, or reaches the age of 66 years old;

and ordered the husband, James Parsons, to pay Bobette $1,154.34 in monthly child

support. Bobette appeals, asking for a raise of maintenance to $8,500.00 per month or a

remand to the trial court for an increase in the maintenance amount. Bobette also argues

the trial court erred when it failed to factor bonus income of James and contributions to

James' tax sheltered investments by his employer when calculating James' income for

purposes of calculating child support. We affirm the maintenance award. We vacate the

child support award, and remand for recalculation, on the ground that the trial court did

not include in its estimation of James' income every source of that income.

FACTS

Bobette and James Parsons met in college, and soon married on January 13, 1979. The couple separated on October 1, 2009. Bobette and James have three children together, two grown and a teenage daughter who lives with Bobette. The daughter was 16 and a sophomore in high school when the court granted the Parsons' divorce on June 5, 2012.

Bobette Parsons earned a bachelor's degree in natural resource planning and a master's degree in soil science. James Parsons earned a bachelor's degree in fisheries and a master's degree in genetic and cell biology.

Bobette Parsons worked as a hydrologist with the Forest Service for seven years. She then worked as a soil conservationist with the United States Department of Agriculture (USDA). Upon the birth of the first child, Bobette took time from work and then returned. Upon the birth of the second child, Bobette and James Parsons agreed Bobette would remain at home to care for the children. Bobette did not work from 1992 through 2007. She now works full-time for the USDA in Hilo, Hawaii, earning $54,000 a year.

After graduate school, James Parsons worked for a trout farm in southern Idaho where he assisted in spawning fish. During his eight years at the farm, he created a trout genetic research program. James then oversaw research for a different trout farm. In

2

1998, with encouragement from Bobette, James accepted employment from a third company, Troutlodge, Inc., first earning $75,000 a year.

James Parsons' annual income has increased since 1998. He received $85,000 in 2000; $98,000 in 2003; $161,000 in 2006; and $182,000 in 2009. James now serves as Troutlodge's Senior Vice President for Technical Services and President of the Marine Division.

In 2005, James Parsons purchased an 8.97 percent interest in Troutlodge Real Estate, LLC, an affiliated entity, for $210,000. In order to purchase this interest, James borrowed $105,000 from the marital couple's shared retirement accounts, and borrowed the remaining $105,000 from Troutlodge officers. Bobette believes that the Troutlodge entities have grown, and will continue to grow, rapidly.

In 2011, James Parson earned a salary of $134,000 and earned bonuses of around $88,000. That year Troutlodge also contributed $22,000 to James' Putnam 401(k) retirement plan. Finally, Troutlodge contributed a distribution of $5,900, dividend of $11,218, and interest payment of $7,290 to James' Individual Retirement Account (IRA).

At trial, both Bobette and James Parsons admitted to living beyond their means. Bobette declared monthly income of $3,921 after taxes and monthly expenses of $8,402. James declared monthly income of $14,183 after taxes and monthly expenses of $16,675.

3

PROCEDURE

James Parsons petitioned for divorce on January 14, 2010. After a trial, the court entered a decree of dissolution on June 5, 2012.

In the divorce decree, the trial court awarded James the couple's entire interest in the two Troutlodge companies, valued at $521,593 in the aggregate. In order to distribute the community property equally, the trial court ordered James to assume $172,858 in community liabilities and pay Bobette a transfer payment of $185,797 within five years, interest accruing at four percent. The monthly cost of servicing the community liabilities is unknown. As for the transfer payment, the court ordered:

- [James] may make as transfer payment to [Bobette] funds from his Troutlodge 401K/IRA accounts. Payment by transfer of IRA or by lien on residence will be at her option, not his. The Court reserves jurisdiction to enter any orders to facilitate transfer if necessary.

Clerk's Papers (CP) at 481. If paid over the course of five years at four percent interest, the amortized monthly cost of the transfer payment to Bobette is about $3,400.

The trial court awarded maintenance for Bobette Parsons at $3,500 monthly as follows: the court ordered James Parsons to pay monthly, from January through June of each year, $2,500 per month, and, from July through December, $4,500 per month. The difference is the result of Troutlodge paying James bonuses July through December of each year. The maintenance award continues until Bobette dies, remarries, or reaches the age of 66 years old, which will occur in 2022. The court granted maintenance because of

4

James' current income, his larger earning capacity, the length of the couple's marriage, and Bobette's being a homemaker and out of the work force for years.

The trial court also ordered James Parsons to pay Bobette $1,154.34 in child support. On the Child Support Schedule Worksheet, the court listed James' "Wages and Salaries" as $18,500 per month, but omitted an amount for "Interest and Dividend Income," "Business Income," and "Other Income." CP at 466. On the worksheet, the trial court declared, "Father's income is calculated using his 2011 income of $222,000 and actual taxes paid in 2011." CP at 469.

The trial court ordered James Parsons to pay child support until their teenage daughter reaches the age of 18 or as long as the daughter remains enrolled in high school, whichever occurs last. The court reserved the right of Bobette Parsons to petition for postsecondary support.

## LAW AND ANALYSIS

On appeal, Bobette Parsons contends (1) the trial court's maintenance award is insufficient to place her and James in roughly equal financial positions for the rest of their lives; and (2) the trial court failed to consider James' deferred compensation, dividends, interest, and bonuses when it estimated his income for purposes of setting child support.

*Maintenance*

James Parsons initially asserts that Bobette Parsons' appellate brief's two-paragraph argument for increased maintenance does not satisfy RAP 10.3(a)(6). The rule requires parties to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." James is correct that unsubstantiated assignments of error are deemed abandoned. *Kittitas County v. Kittitas County Conservation Coalition*, 176 Wn. App. 38, 54, 308 P.3d 745 (2013). But, while Bobette's argument is terse, she cites authority and enunciates her contention such that we may review her assignment of error. Bobette contends the trial court, based upon the holding in *In re Marriage of Rockwell*, 141 Wn. App. 235, 170 P.3d 572 (2007), should have awarded greater maintenance in order to place James and her in roughly equal financial positions for the rest of their lives. We agree to reach the merits of Bobette's assignment of error.

An award of maintenance is within the broad discretion of the trial court. *In re Marriage of Terry*, 79 Wn. App. 866, 869, 905 P.2d 935 (1995). RCW 26.09.090 guides that discretion and reads:

> (1) In a proceeding for dissolution of marriage . . . , the court may grant a maintenance order for either spouse or either domestic partner. The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:
> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and

his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage or domestic partnership;

(d) The duration of the marriage or domestic partnership;

(e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

Under this provision, the only limitation placed upon the trial court's ability to award maintenance is that the amount and duration, considering all relevant factors, be just. *In re Marriage of Washburn*, 101 Wn.2d 168, 178, 677 P.2d 152 (1984). This reviewing court reviews an award of maintenance for an abuse of discretion. *In re Marriage of Zahm*, 138 Wn.2d 213, 226, 978 P.2d 498 (1999).

The Parsons were married for 33 years. Therefore, Bobette Parsons highlights the following quotation from *Rockwell*, "In a long term marriage of 25 years or more, the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives." 141 Wn. App. at 243. In *Rockwell*, this court affirmed the trial court's distribution of the community property, 60 percent to the wife and 40 to the husband, "based on the difference in age, earning capacity, physical condition, and that [the husband] has the ability to earn income and save for retirement in the future." 141

7

Wn. App. at 255. In contrast, the wife in *Rockwell* retired early due to health concerns. 141 Wn. App. at 240. The court reasoned "[w]here one spouse is older, semiretired, and dealing with ill health, and the other spouse is employable, the court does not abuse its discretion in ordering an unequal division of community property." *Rockwell*, 141 Wn. App. at 243.

Bobette Parsons' reliance on *Rockwell* is misplaced for two reasons. First, *Rockwell* concerns the just and equitable division and distribution of property under RCW 26.09.080, not maintenance under RCW 26.09.090. Second, the holding in *Rockwell* was permissive in nature, not mandatory. *Rockwell* does not support Bobette's contention that a trial court must use maintenance to roughly equalize her and James' income in perpetuity.

Instead, "where, as here, the disparity in earning power and potential is great, this court must closely examine the maintenance award to see whether it is equitable in light of the postdissolution economic situations of the parties." *In re Marriage of Sheffer*, 60 Wn. App. 51, 56, 802 P.2d 817 (1990). Bobette Parsons claims that James will earn 2.3 times more than her over the next 10 years, even factoring in maintenance. This prediction may prove accurate. Even so, the trial court's award of maintenance is equitable in light of Bobette and James postdissolution economic situations.

After dissolution, factoring in the maintenance award of $3,500, Bobette's monthly income is about $6,600 and James' $11,100. These numbers do not, however,

account for the court's allocation of most community debts to James, the transfer payment to Bobette, and child support. The amortized monthly cost of the transfer payment is about $3,400. And the court ordered child support of just over $1,100.

Taking the transfer payment and child support into consideration, Bobette Parsons will receive a higher monthly income than James for the five years following dissolution. With the transfer payment and child support, Bobette's monthly income will approximate $11,100, with James retaining about $6,600 of his monthly income. When child support ceases, ostensibly after two years, Bobette's monthly income will be about $10,000 and James' $7,700. After five years, James will likely have greater monthly income than Bobette.

The trial court understood Bobette and James Parsons' predissolution economic situation. Presented with largely illiquid wealth, the court admirably utilized child support, maintenance, and a transfer payment to equally distribute the community property and income over time so that each party might meet his and her immediate needs and obligations. The maintenance award even reflects the seasonal nature of James' bonuses—awarding $2,500 a month January through June, and $4,500 July through December. In light of Bobette and James' postdissolution economic situations, the court's award of maintenance was equitable.

Last, Bobette Parsons points to the likelihood that James' income will increase as Troutlodge continues to grow. Neither the trial court nor this court can predict the future.

9

If and when there is a substantial change in circumstances, including increases or decreases in either party's income, Bobette may move to modify maintenance under RCW 26.09.170. *See, e.g., In re Marriage of Myers*, 54 Wn. App. 233, 773 P.2d 118 (1989).

We conclude the trial court did not abuse it's discretion when awarding the amount of spousal maintenance.

### Child Support

James Parsons again contends that Bobette failed to satisfy RAP 10.3(a)(6). Again, despite the brevity of her briefing, we comprehend Bobette's contentions. Bobette argues the trial court failed to include deferred compensation, dividends, interest, and bonuses as part of James' monthly gross income, as RCW 26.19.071 requires, when it set child support at $1,554.34. We agree.

Trial court decisions in dissolution proceedings will seldom be changed on appeal. *In re Marriage of Stenshoel*, 72 Wn. App. 800, 803, 866 P.2d 635 (1993). This court reviews a trial court's order of child support for abuse of discretion, or misapplication of the law. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990); *Markoff v. Markoff*, 27 Wn.2d 826, 828, 180 P.2d 555 (1947).

"All income and resources of each parent's household shall be disclosed and considered by the court when the court determines the child support obligation of each parent." RCW 26.19.071(1). "[M]onthly gross income *shall include* income from any

10

source," including: salaries, wages, deferred compensation, dividends, interest, bonuses, income from a business. RCW 26.19.071(3) (emphasis added). To calculate net monthly income, RCW 26.19.071(5) instructs courts to deduct:

> (a) Federal and state income taxes;
> (b) Federal insurance contributions act deductions;
> (c) Mandatory pension plan payments;
> (d) Mandatory union or professional dues;
> (e) State industrial insurance premiums;
> (f) Court-ordered maintenance to the extent actually paid;
> (g) Up to five thousand dollars per year in voluntary retirement contributions actually made if the contributions show a pattern of contributions during the one-year period preceding the action establishing the child support order unless there is a determination that the contributions were made for the purpose of reducing child support; and
> (h) Normal business expenses and self-employment taxes for self-employed persons. Justification shall be required for any business expense deduction about which there is disagreement.

"Tax returns for the preceding two years and current paystubs shall be provided to verify income and deductions. Other sufficient verification shall be required for income and deductions which do not appear on tax returns or paystubs." RCW 26.19.071(2).

"Child support worksheets are mandatory, but RCW 26.19.071(1) does not require that the court make a precise determination of income. Instead, the court is required to consider all income and resources of each parent's household." *In re Marriage of Marzetta*, 129 Wn. App. 607, 623, 120 P.3d 75 (2005), *abrogated on another ground by In re Marriage of McCausland*, 159 Wn.2d 607, 619, 152 P.3d 1013 (2007). We must presume that the court considered all evidence before it in fashioning the order. *In re*

11

No. 32159-2-III
*In re Marriage of Parsons*

*Marriage of Kelly*, 85 Wn. App. 785, 793, 934 P.2d 1218 (1997) (affirming a postsecondary support order).

Here, the trial court marked James Parsons' wages and salaries as $18,500 per month, but left blank the child support worksheet's spaces for "Interest and Dividend Income," "Business Income," and "Other Income." CP at 466. The court noted, "[James'] income is calculated using his 2011 income of $222,000 and actual taxes paid in 2011." CP at 469. In 2011, James earned a salary of $134,000 and bonuses of around $88,000, totaling $222,000. Beyond this $222,000, Troutlodge contributed to James' Putnam 401(k) retirement plan almost $22,000, and into his Individual Retirement Account (IRA) Troutlodge contributed a distribution of $5,900, dividend of $11,218, and interest payment of $7,290. These additional contributions total about $46,000.

On the record afforded this court, it appears the trial court calculated James Parsons' income by adding his salary ($134,000) and bonuses ($88,000) to reach its total estimation of $222,000. It follows that the trial court excluded Troutlodge's contributions to James' retirement accounts. The trial court may have excluded part of the retirement contributions under RCW 26.19.071(5)(g), requiring the court to deduct from gross monthly income up to $5,000 in voluntary retirement contributions. In addition, or alternatively, the court may have set aside James' retirement accounts to satisfy the transfer payment, given its order that:

12

> [James] may make as transfer payment to [Bobette] funds from his Troutlodge 401K/IRA accounts. Payment by transfer of IRA or by lien on residence will be at her option, not his. The Court reserves jurisdiction to enter any orders to facilitate transfer if necessary.

CP at 481. Perhaps the trial court disregarded portions of James *and* Bobette's monthly income. As noted in *Stenshoel*, "the portion of the [transfer] payments representing interest paid on the obligation may constitute income" for purposes of RCW 26.19.071. *Stenshoel*, 72 Wn. App. at 805. The interest paid here will average around $325 a month. The trial court likely omitted this amount when it estimated Bobette's income.

Regardless, the trial court excluded entire sources of income. Although RCW 26.19.071 subsection (1) requires only that "[a]ll income and resources . . . shall be disclosed and *considered*," subsection (3) lists sources of income that "monthly gross income *shall include*." RCW 26.19.071 (emphasis added). It is not enough to *consider* all sources of income, courts must *include* the sources listed in RCW 26.19.071(3). Here, the trial court excluded from its estimation of James' income: about $22,000 in contributions to his 401(k) retirement plan almost; and a distribution of $5,900, dividend of $11,218, and interest payment of $7,290 into his IRA. To some extent, the trial court needed to include these sources of income as deferred compensation, contract-related benefits, dividends, or interest. *See* RCW 26.19.071(3)(a)-(u).

We note that neither RCW 26.19.071 nor case law require mathematical precision. On remand, the trial court need not employ the above figures. But its calculation of

13

James' monthly income and the attendant child support worksheet must include each source of income listed in subsection (3) of RCW 26.19.071, for which the evidence clearly shows that the source of income exists. To exclude an entire category of income is a misapplication of RCW 26.19.071(3).

We further note that a trial court's categorical exclusion of a source, or sources, of income will rarely be harmless given RCW 26.19.080(1). That statute provides, "The basic child support obligation derived from the economic table shall be allocated between the parents based on each parent's share of the combined monthly net income." Thus, even when the parents' combined monthly net income exceeds the economic table in RCW 26.19.020, as is the case here, the relative increase in one party's income causes a formulaic increase in the portion of the basic child support obligation for which that party is responsible. For any error in calculating a party's gross monthly income, RCW 26.19.080(1) defines the resulting prejudice. A court might find such prejudice negligible, but never nonexistent. Had the trial court included the additional $46,000 in James' gross annual income, he would be responsible for a larger portion of the basic child support obligation. We estimate James would pay about $120 more per month in child support. The error is not harmless.

14

No. 32159-2-III
*In re Marriage of Parsons*

CONCLUSION

We affirm the trial court's award of spousal maintenance. We vacate the trial court's award of child support and remand for a recalculation consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

15